## INTER-RIVER DRAINAGE DISTRICT, Appellant v. ELIJAH HAM et al.

### Division Two, July 16, 1918.

1. **SURFACE WATER: Protection: Damages: Condemnation.** Overflow water from a stream is surface water, and the owner of land has the right by constructing embankments to shut off such surface water from his land without being liable in damages to the owner of another tract for the injury thus done. But that rule does not relieve a drainage district from responding in damages done to land between its levee and such stream by increasing the overflow of water on such land, for the drainage district does not own land or a right of way, but in seeking to condemn a right of way for its levee through the land of such owner must comply with the constitutional mandate declaring that "private property shall not be taken or damaged for public use without just compensation."

2. ———: ———: ———: ———: **Levee Through Owner's Land: Increased Overflow.** The exceptors owned 118.95 acres of land bounded by a river. The drainage district took 8.1- acres of the tract for the right of way of its levee, and the levee was so constructed as to leave 30.95 acres of the tract outside of the levee and between it and the river. *Held*, that, as the drainage district did not leave all of exceptors' land between the levee and the river, but appropriated a part of it for the levee right of way, it was liable in damages for the increased overflow of the river waters on the 30.95 acres, under that provision of the Constitution that says that "private property shall not be taken or damaged for public use without just compensation," and cannot escape the payment of such damages on the theory that the owner of lands has the right to shut off surface water from his lands without being liable in damages to another owner for the injury thus caused, for the drainage district is not the owner of any land, but is seeking to condemn a right of way for the levee through, and not outside of, exceptors' lands. [Distinguishing Jackson v. United States, 230 U. S. 1, and Hughes v. United States, 230 U. S. 24.]

Appeal from Butler Circuit Court.—*Hon. J. P. Foard,* Judge.

AFFIRMED.

*L. R. Thomason* and *Oliver & Oliver* for appellant.

(1) The injury, if any, caused by the raising of the water between a levee to be constructed by the drainage district and the bank of a river which overflows its banks to such an extent as to render necessary the construction of the levee in order to protect the lands within the district is *damnum absque injuria.* Cubbins v. Commissioners, 241 U. S. 351; Jackson v. United States, 230 U. S. 1; Hughes v. United States, 230 U. S. 24; Rex. v. Commissioners, 23 Eng. Ruling Cases, 792, 8 Barn. 355; Eldridge v. Trezevant, 160 U. S. 452; McCoy v. Board of Directors, 95 Ark. 345; St. L. S. W. Ry. v. Board of Directors, 207 Fed. 338, 197 Fed. 815; Richardson v. Levee Com., 62 Miss. 807; Lamb v. Reclamation Dist., 73 Cal. 125; Tinicum Fishing Co. v. Coster, 36 Am. Rep. 632; Farnham on Waters, p. 1338. (2) The occasional raising of the water by the construction of the levee does not constitute a taking within the meaning of the Constitution. It is but the incidental consequence of the lawful and proper exercise of a governmental power. Transportation Co. v. Chicago, 99 U. S. 635; Scranton v. Wheeler, 179 U. S. 141; Migault v. Springs, 199 U. S. 473; Gibson v. United States, 166 U. S 269. (3) It is the settled rule in this State that waters overflowing the banks of a stream are surface waters. McCormick v. Railroad, 57 Mo. 433; Abbott v. Railroad, 83 Mo. 280; Schneider v. Railroad, 29 Mo. App. 71; Jones v. Railroad, 18 Mo. App. 251; Benson v. Railroad, 78 Mo. 512; Edwards v. Railroad, 97 Mo. App. 109. (4) At common law surface water is a common enemy. The common-law rule obtains in Missouri, and any individual or group of individuals may construct levees to protect their property from such waters. The drainage district being created for the purpose of protecting property has the same right. Thompson v. Railroad, 137 Mo. App. 69; Thaele v. Planing Mill Co., 165 Mo. App. 717; McCormick v. Railroad, 57 Mo. 437; Benson v. Railroad, 78 Mo. 504;

275 Mo.—25

Walther v. City of Cape Girardeau, 166 Mo. App. 476; Grant v. Railroad, 149 Mo. App. 310; Mehonray v. Foster, 132 Mo. App. 231; Abbott v. Railroad, 83 Mo. 285. (5) All the lands in the Louisiana Purchase adjacent to streams when acquired by the United States were charged with a convenant authorizing the sovereign to use such portion of the land along the river banks as was necessary for the construction of roads, tow-paths, levees and other public improvements. That covenant still runs with the land and this appellant, an arm of the State, has the legal right to appropriate that right to its own benefit. Spanish Regulations for the Allotment of Lands; Laws Mo. (Digest) 1818, p. 438 et seq., p. 442, Arts. 3, 8, 14 and 26; Treaty between French Republic and Spain concluded Oct. 1, 1800, ceding Louisiana Territory to France, U. S. Senate Doc. 357, p. 506; Treaty between French Republic and United States, concluded April 30, 1803, ceding Louisiana Territory to United States, Laws Mo., 1818, p. 18; Code Napoleon, Articles 649 and 650; Sec. 16 of an Act of Congress entitled "An Act providing for the government of the Territory of Missouri," approved June 4, 1812; Laws of Mo. 1818, l. c. p. 66; Third proposition, Sec. 6, Act of Admission of Territory of Missouri as a state, R. S. Mo. p. 28; Cubbins v. Commissioners, 241 U. S. 351; Eldridge v. Trezevant, 160 U. S. 452. The further intention of the Congress of the United States is evidenced by the passage of the Act of September 28, 1850, granting to the State of Arkansas and other states the swamp and overflowed lands lying within their borders, "To enable the State of Arkansas to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein," etc. 9 U. S. Stat. 519. This appellant has been created to carry out the trust imposed by the Federal government on the several states having swamp lands, and should be permitted to avail itself of all rights incident to the cause for its creation.

*Sheppard & Sheppard* and *Leslie C. Green* for respondent.

The damages suffered by respondents on account of the erection of a levee by appellant through their land, causing the water from the St. Francois River to overflow the land between the levee and river bank to a greater depth, and at more frequent intervals, is not *damnum absque injuria.* Constitution of Missouri, art. 2, sec. 21; Laws 1913, p. 239, sec. 14; State ex rel. v. Taylor, 224 Mo. 481; Tarkio Drainage District v. Richardson, 237 Mo. 77.

ROY, C.—This is an appeal from the judgment of the circuit court of Butler County increasing the damages awarded by the commissioners appointed by that court to assess benefits and damages to the lands and property in the Inter-River Drainage District.

The exceptors (respondents), as cotenants, own 118.95 acres in a body bounded on the northeast by the St. Francis River, which river is the eastern boundary of the drainage district. The contemplated levee runs along the southwest side of the river so as to bisect the lands of exceptors. The right of way for that levee includes 8.1 acres of the tract, leaving 30.95 acres outside of the right of way and between it and the river, and including 79.90 acres of the tract within the protection of the levee.

Exceptions were filed by respondents to the report of the commissioners assessing benefits and damages. A jury increased the net damages from $490 to $605.

The district in that trial asked the following instruction, which was refused:

"The court further instructs you that even though you may find that the lands of exceptors are not now under present conditions flooded except when the St. Francis River reaches exceptionally high stages, and may further find that, after the completion of the works and improvements of the Inter-River Drainage District and the building of the St. Francis River Levee through

the lands of exceptor, his said lands lying between said levee and the bank of the St. Francis River will be overflowed by the flood waters of said river more frequently and to a greater depth and for longer periods of time than they are now overflowed, still such additional overflows on said part of exceptors' lands do not entitle him to recover damages from the drainage district therefor, and you will not take such facts and conditions into consideration in assessing the damages in this case.''

The court instructed the jury that the district was liable for such damages. There was evidence tending to show such increase in the height of the water outside the levee. It is conceded that such question is the only one here involved.

Appellant contends that overflow water from a' stream is surface water and that one proprietor of lands has the right to shut off such surface water from his land without being liable to another proprietor for the damage thus caused. That rule must be conceded. [McCormick v. Railroad, 57 Mo. 433; Benson v. Railroad, 78 Mo. 504; Abbott v. Railroad, 83 Mo. 1. c. 280; Goll v. Railroad, 271 Mo. 655.]

Surface Water: Damages.

But that rule does not help this appellant in the least. It is not the proprietor of one tract of land engaged in the act of shutting off the surface water from its tract, and thus keeping it back on the land of these respondents. This appellant does not own any land, nor any right of way for its levee. It is seeking to condemn such right of way over the land of respondents. In order to do that, it must comply with our State Constitution, Section 21 of Article 2, which says: "Private property shall not be taken or damaged for public use without just compensation." In State ex rel. v. Taylor, 224 Mo. 393 1. c. 482, it was said:

"In pursuance to that constitutional mandate, the Legislature duly enacted the drainage laws we now have under consideration. And whenever private property is about to be taken or damaged in consequence

of said improvements, then in steps said Section 21 and says all damages done private property by means thereof shall be first paid.''

Appellant cites Jackson v. United States, 230 U. S. 1, and Hughes v. United States, 230 U. S. 24. In both those cases levees were constructed, but not on the lands of the complainants. Increased overflow of those lands was caused thereby. It was held that there could be no recovery. If the appellant were proceeding to build a levee leaving all of respondents' land between the levee and the river, those cases would be in point. As it is, they do not apply.

Appellant is bold enough to cite Eldridge v. Trezevant, 160 U. S. 452, where is was held that in the State of Louisiana, in pursuance of the laws of that State, the land of an individual could be taken without compensation for the construction of a levee on the bank of the Mississippi. In that case it was said:

''The concession distinctly made by the complainant, in his bill, that the state courts refuse to recognize that owners of lands abutting on the Mississippi River and the bayous running to and from the same, where levees are necessary to confine the waters and to protect the inhabitants against inundation, are entitled, when a public levee is located upon such lands, to invoke the application of that provision of the state constitution which provides that 'private property shall not be taken nor damaged for public use without just and adequate compensation first paid,' and repeated in the brief filed on his behalf in this court, relieves us from an extended examination of the origin and history of the state enactments, constitutional and legislative, and of the decisions of the state courts on this subject.

''It is important, however, to observe the ground upon which the state legislative and judicial authorities base their action. That ground is found in the doctrine existing in the Territory of Louisiana before its purchase by the United States and continuing to this time, that lands abutting on the rivers and bayous are subject to a servitude in favor of the public, whereby such portions

thereof as are necessary for the purpose of making and repairing public levees may be taken, in pursuance of law, without compensation. This doctrine is said to have been derived from the Code Napoleon, whose 649th and 650th articles were as follows:

" 'Servitudes established by law have for object the public or communal utility, or the utility of private persons. Those established for the public or communal utility have for object the two paths along the navigable or floatable rivers, the construction or repairing of roads and other public or communal works. All that concerns this kind of servitude is determined by laws or particular regulations.' "

It is sufficient to say that we are proceeding under the law of Missouri, and not under that of the State of Louisiana. The difference in the laws of the two states is justified by the difference in the topography of their lands. We call attention to the fact that this appellant is not proceeding herein on the theory that it has a right to take without compensation therefor the lands of the respondents for the construction of a levee. If the law of Louisiana were in force in this State, as claimed by appellant, there would be no necessity for it to resort to this proceeding. It could take the right of way for the levee without payment therefor and without condemnation. The judgment is affirmed.

*White, C.*, concurs.

PER CURIAM:—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.