ANDREW ANDERSON, EDITH ANDERSON and PHOENIX MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, Appellants, v. INTER-RIVER DRAINAGE & LEVEE DISTRICT.

Division One, July 1, 1925.

1. **DAMAGES TO LANDS: Overflow Water: Caused by High Levee.** A drainage district embracing low lands on one side of a river is not liable in damages for injuries to somewhat higher lands on the opposite side outside the district, caused by the construction of a high levee along the river for a distance of twenty-five miles, which deflects the river waters from the lands in the drainage district, and causes them to overflow the outside lands on said opposite side, although, before said levee was constructed, the waters of the river in flood time broke over its banks and overflowed the flat and low lands in the district, thereby lessening the overflow of the lands on the opposite side and leaving them cultivatable. There being no obstruction of the river channel or change in a natural watercourse, the drainage district is not liable in damages for constructing and

maintaining a levee which protects the lands of the district from overflow, although it thereby causes a greater overflow in flood time by the waters of the river upon the lands outside the district, which increased overflow decreases their productivity.

2. **PLEADING: Demurrer: Admissions: Obstruction of River Channel: Application of Rule Pertaining to Surface Water.** A demurrer to the petition, charging that it does not state sufficient facts to constitute a cause of action, admits all facts properly pleaded, and carries an admission of all inferences that may fairly and reasonably be drawn from the allegations. But a demurrer does not admit as a fact that which the petition contradicts, and a conclusive or general statement is restricted by specific statements of particulars which necessarily enter into and qualify and limit to general statement. A petition alleging that a levee extends in a southern direction twenty-five miles; that it is constructed along and on the west bank of a river; that "plaintiffs' land lies adjacent to and borders along and near to the east bank of said river, and at a distance of about one hundred feet from the center of the main channel of said river, and being distant eastwardly from said levee from a quarter of a mile to three-fourths of a mile;" that the river runs through a low, flat and practically level country; that the lands on which the levee was built were frequently under water before the levee was built, and during a portion of the year formed a part of the bed of said river; that "the waters of said river escaped and passed down the river at frequent intervals, and at various seasons of the year, over the lands upon which said levee was built, thereby enabling said waters to escape and pass off and down said river without obstruction and more rapidly than they otherwise would;" that "said levee constitutes an obstruction to said river," and that "the construction of the levee narrowed the channel of said river, and caused its waters to pile up and flow over its eastern bank" upon plaintiffs' lands, contains contradictory allegations, and a demurrer thereto does not admit that the levee narrowed the channel of the river or obstructed the usual flow of the water therein. A levee on the west bank, and distant from one-fourth to three-fourths of a mile (less one hundred feet) from the center of the main channel off the river, is not situated in the channel, and does not narrow or obstruct the channel, for a fresh-water river does not include lands beyond the banks; and such demurrer therefore does not prevent the application to the petition of the rule relating to surface and overflow water.

3. **DRAINAGE DISTRICT: Referable to Police Power: Civil Law: Surface Water.** The power to drain swamp and overflow lands is referable to the police power, and a drainage district organized un-

der the statutes is a political subdivision of the State, to be classed with counties, special road districts and school districts, and the private benefits accruing to individual landowners are regarded as incidental; and as to them the common-law rule as to surface and overflow waters, and not the civil-law rule, is in force.

4. ———: **Same Right as Private Landowner as to Surface Waters: Damages.** A drainage district is not a landowner, but under the common-law rule in force in this State it can do, as a governmental agency, in a representative and collective capacity, for the State and for the lands embraced within the district, what individual landowners can do under the common-law rule for the protection of their lands from surface water, and that rule is that one owner has the right to shut off surface water from his land without being liable for the damage this causes to the adjacent land of another. A drainage district is not liable in damages to owners of lands lying outside the drainage district for injury thereto caused by erecting a levee to prevent surface waters from overflowing lands within the district, even though that increases the overflow upon and over such outside lands.

5. ———: **Police Power: Constitutional Damages: Surface Water: Damnum Absque Injuria.** The protection of swamp and low lands from overflow by surface waters by a governmental agency, such as a drainage district, by the erection of levees, is an exercise of the police power, and although thereby the waters thus deflected from the lands in the district increases the overflow over and upon lands outside the district, even to the extent of lessening their productivity, the injury to such outside lands is by the common-law rule *damnum absque injuria*, and such damages are not those consequential damages contemplated by the constitutional provision (Art. 2, sec. 21) declaring that "private property shall not be taken or damaged without just compensation," and a proceeding to recover such damages is to be distinguished from one to recover damages to lands which have been taken or damaged by the exercise of the power of eminent domain. Making compensation for an injury is not an inevitable condition of the exercise of the police power, and the construction of a levee to protect lands from overflow by surface water is a legitimate exercise of the police power, and injury thereby caused to lands outside the drainage district by increasing the overflow upon said lands is not, in the absence of a statutory declaration, a damage within the meaning of said constitutional provision.

Corpus Juris-Cyc. References. Drains, 19 C. J. Section 4, p. 607, n. 18; Section 13, p. 616, n. 78. Eminent Domain, 20 C. J., Section 6, p. 519, n. 48; Section 12, p. 526, n. 81; Section 123, p. 643, n. 84; Section 150, p. 688, n. 9. Pleading, 31 Cyc. p. 83, n. 16; p. 333, n. 76; p. 336, n. 83; p. 337, n. 95. Waters, 40 Cyc. p. 639, n. 11; p. 642, n. 19.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*J. L. Fort, G. W. Munger* and *Haff, Meservy, German & Michaels* for appellants.

(1) The court erred in sustaining defendant's general demurrer to plaintiffs' first amended petition. Art. 2, sec. 21, Mo. Constitution; Bruntmeyer v. District, 196 Mo. App. 360; Schalk v. District, 226 S. W. 277; D'Arcourt v. District, 245 S. W. 397; Bradbury v. District, 236 Ill. 36, 19 L. R. A. (N. S.) 991; Tarkio v. Richardson, 237 Mo. 49; Inter-River v. Ham, 275 Mo. 384; Greenwell v. Wills & Sons, 239 S. W. 583. The allegations show that plaintiffs' lands were damaged for a public use, and that they have a right of action against the district, under the Constitution of Missouri, for such damages. See authorities above cited. (2) The power to drain swamp and overflowed lands is referable to the police power of the State and is a legislative function, and the State may exercise this power through the agency of drainage districts. D'Arcourt v. District, 245 S. W. 396. But the police power is always subject to the rule that the Legislature may not exercise any power that is expressly or impliedly forbidden by the Constitution. City v. Commission, 207 S. W. 801; State v. Julow, 129 Mo. 163; State v. Railway Co., 242 Mo. 339; Ives v. Company, 201 N. Y. 271; Smith v. Farr, 46 Colo. 364; Belleville v. Company, 234 Ill. 438; State v. Company, 124 Iowa, 323; State v. Hyman, 98 Md. 596; Black v. Schwartz, 27 Utah, 387; State v. Donald, 160 Wis. 21. (a) Police regulations must not extend beyond that reasonable inference which tends to preserve and promote enjoyment generally of those inalienable rights with which all men are endowed and to insure which governments are instituted among men, and must not violate any express prohibition or requirement of the State or Na-

tional constitution. Bonnett v. Vallier, 136 Wis. 201. (b) The exercise of police power cannot be made a cloak under which to overthrow or destroy constitutional rights. State v. Railroad, 242 Mo. 339; State v. Earl, 152 Mo. App. 235. (c) However broad the scope of police power, it is always subject to the rule that the Legislature may not exercise any power that is expressly or impliedly forbidden to it by the State Constitution. 12 C. J. 930, 934; State v. Ashbrook, 154 Mo. 375; State v. Julow, 129 Mo. 163; State v. Smith, 233 Mo. 242. (d) And whether it has, or has not, done this is a judicial question. 12 C. J. 933; State v. Railroad, 242 Mo. 339. The Constitution expressly forbids the damaging of private property for public use without just compensation, and if the Legislature should expressly provide that drainage districts should not be sued by owners of private property damaged for the use of the district the law would be unconstitutional. (3) To show that plaintiffs' property has been damaged for a public use, we cite the following cases: Houck v. District, 248 Mo. 373; State ex rel. v. District, 269 Mo. 458; Morrison v. Morey, 146 Mo. 543; Carter v. District, 262 Mo. 556; State ex rel. v. District, 236 S. W. 849; State ex rel. v. District, 236 S. W. 15; Arnold v. District, 209 Mo. App. 220; Greenwell v. Wills, 239 S. W. 578; Tant v. District, 238 S. W. 848; Hausgen v. District, 245 S. W. 401. The question of whether or not plaintiff's lands have been damaged for a public use is a judicial question. State v. West, 198 S. W. 1111. (4) To show that the constitutional provision above quoted is self-enforcing and that damages may be recovered in any appropriate common-law proceeding, we cite the following cases: Hickman v. City, 120 Mo. 116; Clemens v. Company, 184 Mo. 58; McGrew v. Railroad, 230 Mo. 560; McGrew v. Paving Co., 247 Mo. 560; Smith v. Sedalia, 244 Mo. 124; Markowitz v. Kansas City, 125 Mo. 485; Greenwell v. Wells & Sons, 239 S. W. 578; Thurston v. St. Joseph, 51 Mo. 510; Householder v. Kansas City, 83 Mo. 488, 21 Fed. 257. (a) The words "or damaged" placed in the Con-

stitution after the word "taken" broaden the field of consequential damages where there is no physical taking of the owner's property. St. Louis v. Railroad, 272 Mo. 80. (b) There may be a violation of the constitutional guaranty without a physical taking. 12 C. J. 1215; In re Jacobs, 98 N. Y. 98; Janesville v. Carpenter, 77 Wis. 288; In re Marshall, 102 Fed. 325. (5) Respondent appeared in this case, obtained leave to answer and answered, and after answering, filed its plea to the jurisdiction of the court, and its plea was overruled. Granting that respondent was right in its contention that it had been sued in the wrong venue in this case, how can its contention prevail against the solemn judgment of the trial court deciding its plea to the jurisdiction against it? Baisley v. Baisley, 113 Mo. 550. The respondent waived its right to attack the venue in which it was sued by obtaining leave to answer and by answering. State v. Southern, 214 S. W. 103. (6) The general demurrer went to the merits of the case and a judgment sustaining the same, appealed from, would be a bar to a subsequent suit between the same parties touching the same cause of action. Wells v. Moore, 49 Mo. 229; Insurance Co. v. Smith, 117 Mo. 261. (7) The demurrer reaches only matters which appear on the face of the petition. City v. Upham, 211 S. W. 882. (a) A demurrer admits all well-pleaded facts. Brennan v. Church, 192 S. W. 982; Master v. Jones, 226 S. W. 885. A demurrer does not admit conclusions of law alleged. State v. Harty, 276 Mo. 583; Harelson v. Tyler, 281 Mo. 383; Musser v. Musser, 281 Mo. 649. (b) In determining the legal effect of the demurrer, the whole petition should be looked to, for the demurrer does not admit a fact which the petition contradicts. Searcy v. County, 176 Mo. 493. (c) In distinguishing between facts and conclusions of law it must be borne in mind that an ultimate fact which is a corollary from other facts is still a fact, and the means by which its existence is to be established need not be proved. Jones v. Co., 187 Mo. App. 602.

*Atkinson, Rombauer & Hill, William N. Barron* and *Oliver & Oliver* for respondent.

(1)  It is conceded that the St. Francis River overflowed its banks and that the Inter-River Drainage District built the levee on the west side of the river to protect the lands within the district from the overflow waters. Such waters are surface waters.  Goll v. Railroad, 271 Mo. 668; I. R. D. D. v. Ham, 275 Mo. 384; Adair Drainage District v. Railroad, 280 Mo. 244; Abbott v. Railroad, 83 Mo. 271; Wells v. Payne, 235 S. W. 488; Vanlandingham v. Railroad, 206 S. W. 399; Brown v. Railroad, 248 S. W. 15.  (2)  The common-law doctrine as to surface water obtains in Missouri.  Surface water is to be treated as a common enemy and the lower proprietor may rightfully protect his property therefrom by any means available. Adair Dr. Dist. v. Railroad, 280 Mo. 252; Goll v. Railroad, 271 Mo. 668; I. R. D. D. v. Ham, 275 Mo. 384; Abbott v. Railroad, 83 Mo. 271; Thompson v. Railroad, 137 Mo. App. 69; Thoele v. Planing Mill Co., 165 Mo. App. 707; Mehonray v. Foster, 132 Mo. App. 229; Appelgate v. Franklin, 109 Mo. App. 293; Johnson v. Leazenby, 202 Mo. App. 232; Hoester v. Hemsath, 16 Mo. App. 485. (3)  In order to constitute an actionable wrong two factors must concur; first, a wrongful act; second, injury resulting therefrom.  Rex v. Commrs., 8 Barn & C., 362; 1 C. J. 937, and notes; Lamb v. Reclamation Dist., 73 Cal. 125; Bruner v. Martin, 76 Kan. 862.  The building upon the bank of a river by defendant of a levee upon its own land to protect itself against overflow water escaping from such river, is lawful in itself.  There was no invasion of a right possessed by plaintiff.  Hence no wrong or actionable act has been committed.  Abbott v. Railroad, 83 Mo. 283; McCormick v. Railroad, 57 Mo. 433; Thompson v. Railroad, 137 Mo. App. 69; Goll v. Railroad, 271 Mo. 668; Mehonray v. Foster, 132 Mo. App. 231; Railroad v. Schneider, 30 Mo. App. 620; Adair Drainage Dist. v. Railroad, 280 Mo. 244.  (4)  The levee was built in the usual and ordinary manner.  It did not

unnecessarily injure plaintiff. There is no allegation
that it was built otherwise. The only injury complained
of is increased height of the water on the east side which
necessarily resulted from building the levee. That in-
crease in height affected all lands on the east side of
the river. Such an injury is consequential and indirect,
and is *damnum absque injuria.* Inter-River D. D. v.
Ham, 275 Mo. 384; Goll v. C. & A. Railroad, 271 Mo.
655; Adair D. D. v. Railroad, 280 Mo. 252; Jackson v.
United States, 230 U. S. 1; Hughes v. United States, 230
U. S. 24; Cubbins v. Mississippi River Comm., 241 U.
S. 351; Cubbins v. Mississippi River Comm., 204 Fed.
303; Tenn. v. Board Directors, 249 U. S. 588, 63 L. Ed.
790; McCoy v. Plum Bayou Levee Dist., 95 Ark. 345;
Gray v. Reclamation Dist., 163 Pac. 1031; Indian Creek
D. D. v. Garrott, 85 So. 312; St. Louis-S. W. Railroad
v. Miller Levee Dist., 207 Fed. 338; Lamb v. Reclama-
tion Dist., 73 Cal. 125, 14 Pac. 625; Board of Levee
Commrs. v. Harkleroads, 62 Miss. 807. (5) There was
no obstruction of the channel of the St. Francis River
by the defendant. Defendant's levee is alleged to have
been built on the west bank of the river. The channel
is the depression in the earth's surface between the banks
through which the water of the stream usually flows. It
is the sunken or eroded bed of the stream between the
banks. It is the depression in which the waters of the
stream are confined when unaffected by drouth or flood.
The plaintiffs' theory that there are two channels, one
a normal channel such as above described, and the other
a "flood channel" of undefined extent and dependent
solely on the volume and extent of the overflow, is not the
law. There is no such "flood channel." Cubbins v.
Mississippi River Comm., 241 U. S. 368; 6 Cyc. 891; Web-
ster New Internatl. Dict. (1920 Ed.); 2 Words & Phrases,
1059-60; State ex rel. v. Longfellow, 169 Mo. 121; State
v. Muncie Pulp Co., 104 S. W. 443; Benjamin v. River
Imp. Co., 42 Mich. 628; St. L. I. Mt. & S. Ry. v. Ramsey,
53 Ark. 314; Houghton v. Railroad, 47 Iowa, 370; Stover
v. Jack, 60 Pac. 339; Village of Prairie Du Rocher v.

Milling Co., 93 N. E. 425. (6) The plaintiffs' alleged injury is the result of building the levee by defendant. The levee was lawfully constructed. Injury that results as a consequence of a lawful exercise of the police power by a duly constituted governmental agency, engaged in performing a public purpose or function, is *damnum absque injuria,* and this is true, even though the injury be wrongfully inflicted. It must be conceded that the defendant is a duly constituted governmental agency performing only public functions. Murtaugh v. St Louis, 44 Mo. 479; McKenna v. St. Louis, 6 Mo. App. 320; Behrmann v. St. Louis, 273 Mo. 578; Trower v. Louisiana, 198 Mo. App. 352; Ulrich v. St. Louis, 112 Mo. 143; Cassidy v. St. Joseph, 247 Mo. 206; Healy v. Kansas City, 277 Mo. 626; Zummo v. Kansas City, 225 S. W. 934; Arnold v. Worth Co. Drainage Dist., 234 S. W. 349; Reardon v. St. Louis County, 36 Mo. 560; Swineford v. Franklin County, 73 Mo. 279; Clark v. Adair County, 79 Mo. 536; Pundman v. St. Charles County, 110 Mo. 594; Searcy v. Clay County, 176 Mo. 515; Moxley v. Pike County, 276 Mo. 449; Lamar v. Bolivar Special Rd. Dist., 201 S. W. 890; Cochran v. Wilson, 287 Mo. 210; D'Arcourt v. Little River Drain. Dist., 245 S. W. 394, 253 S. W. 966; Schwepker v. Little River Drain. Dist., 245 S. W. 400, 253 S. W. 968; Hausgen v. Elsberry District, 245 S. W. 401, 250 S. W. 905. (7) The defendant has not exercised the power of eminent domain. It has done nothing more than any individual or group of individuals might lawfully do to protect their farms from overflow. An individual cannot exercise the power of eminent domain and this defendant has not done so. Any temporary injury to plaintiffs that may have incidentally resulted from building a levee on the opposite side of the St. Francis River is *damnum absque injuria.* A lawful exercise of the police power must meet with uncompensated obedience, although consequential injury may result therefrom. Such an injury is not a taking or damaging of property within the meaning of the Constitution. The interest of the individual must

always give way to the greater good that will result to the State by reason of the exercise of the police power. All property rights are held subject to a proper and legitimate exercise of the police power by the State. The Legislature authorized the building of the levee. This court is committed to the doctrine that the service which defendant rendered thereby is purely governmental in character and that the district has no private nor proprietary function to perform. Hence the alleged consequential injury is not within the constitutional limitation. C. B. & Q. Railroad v. Illinois, 200 U. S. 561, 50 L. Ed. 596; Gibson v. United States, 166 U. S. 269, 41 L. Ed. 996; Scranton v. Wheeler, 179 U. S. 141, 45 L. Ed. 126; Bedford v. United States, 192 U. S. 217, 48 L. Ed. 414; New Orleans Gas Light Co. v. Drainage Comm., 197 U. S. 453, 49 L. Ed. 831; Northern Trans. Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336; Manigault v. Springs, 199 U. S. 473, 50 L. Ed. 274; Atlantic Coast Line v. Galdsboro, 232 U. S. 548, 58 L. Ed. 721; C. & A. Railroad v. Tranbarger, 250 Mo. 46, 238 U. S. 67, 59 L. Ed. 1204; St. Louis Gunning Co. v. St. Louis, 235 Mo. 99; State v. Mo. Pac. Ry., 242 Mo. 339; Eischenlaub v. St. Joseph, 113 Mo. 404; St. Louis v. McCann, 157 Mo. 308; State ex inf. v. Merchant's Exchange, 269 Mo. 356; In re Kansas City Ordinance, 252 S. W. 404.

LINDSAY, C.—The plaintiffs, Andy Anderson and Edith Anderson, as owners of 262 acres of land lying in Stoddard County, along the east bank of the St. Francis River, sued defendant Inter-River Drainage & Levee District, a district organized under a decree of the Circuit Court of Butler County, and alleged to be located in Butler County. The Phoenix Mutual Life Insurance Company is the holder of a lien under a deed of trust upon said land, securing the payment of a loan. The plaintiffs asked judgment for thirty thousand dollars as the damages alleged to have been sustained by them through the construction by defendant of a levee upon the west bank of said river, which it is alleged caused the waters of said river to be thrown over and

upon plaintiff's land, rendering it unfit for cultivation. The St.-Francis River forms the boundary line between Stoddard County on the east and Butler County on the west.

The trial court sustained a general demurrer to plaintiffs' amended petition, and plaintiffs declining to plead further, judgment was entered for defendant, and the plaintiffs have appealed. The issues presented here are those arising upon the demurrer to said amended petition.

Certain matters touching the question of jurisdiction of the Circuit Court of Stoddard County over the defendant, and touching procedure and practice, discussed in the brief for plaintiffs, are not referred to in the brief of defendant, and require no more at this time than a word of explanation. It appears from the printed transcript of the whole record and of the minutes of the trial judge, that the original petition was filed by plaintiff Andy Anderson, against this defendant and also against Mingo Drainage District, a district organized and located in Stoddard County. In the original petition the plaintiff sought recovery against both districts for damages caused through overflow of his land, which is not situated in either district, by the improvements respectively constructed by Mingo Drainage District, in Stoddard County, east of the St. Francis River, and by defendant in Butler County, west of said river. Process issued. Both of said districts appeared and took time to plead. Afterward the Mingo District filed its demurrer, and this defendant filed answer, and the cause was continued by agreement. At the next term the plaintiff dismissed the cause as to the Mingo Drainage District, and filed the amended petition against this defendant alone, and therein there were joined, as co-plaintiffs, Edith Anderson and Phoenix Mutual Life Insurance Company. Afterward, the defendant filed its plea to the jurisdiction of the court over the defendant, based upon the nature of the prior proceedings referred to and alleging that the process of the court had been abused to bring de-

fendant within its jurisdiction. The plea was overruled. Then followed the defendant's demurrer to said amended petition upon the ground that the petition "fails to state facts sufficient to constitute a cause of action against this defendant." The plaintiffs, perhaps in anticipation that defendant would press here the question of jurisdiction and certain other questions having to do with appellate procedure, have gone at some length into these questions and have cited numerous authorities thereon, but defendant's attorneys have raised no issue here, as to the venue, or as to jurisdiction over the defendant, or as to the steps taken in the appeal, but have confined their statement, brief and argument to the issues raised by the demurrer—the question whether the petition states a cause of action.

The petition alleges that defendant district was incorporated "for the purpose of drainage from its territory by means of ditches and drains, the water that may fall within said territory, and likewise to prevent, by means of levees and embankments, waters from Petition. outside of said territory from flowing into said territory." After setting forth the *status* of the respective parties, and describing the land, the same being situated in Stoddard County, and lying east of the St. Francis River, the plaintiffs continued as follows:

"Aver that no part of said real estate lies within, or constitutes any part of, the territory of said drainage district, neither has said real estate, or any part thereof, been assessed with benefits or awarded damages, on account of the location and construction of the improvements of said district hereinafter described.

"Aver that about the year 1919 said district constructed a levee from ten to fifteen feet high, along and on the west bank of St. Francis River, from a point on said river known as Hodge's Ferry, in the County of Butler and State of Missouri, in a general southern direction for a distance from said ferry of about twenty-five miles, and to the dividing line between the State of Arkansas and the State of Missouri; that from the be-

ginning point of said levee, at said ferry, to the ending point thereof at said state line, said river forms the dividing line between said Butler County, on the west side of said river, and Dunklin County and Stoddard County, in the State of Missouri, on the east side of said river.

"Aver that the lands in said Butler County which constitute the west bank of said river, between said ferry and said state line, were, and are, lower than the lands in the counties of Dunklin and Stoddard aforesaid, which constitute the east, or opposite, bank of said river, from said ferry to said state line.

"Aver that the lands lying on the east side of said river, between said ferry and said state line, or most of said lands, slightly, or gradually, fall eastwardly from the eastern bank of said river, between said ferry and said state line, and that plaintiffs' said land lies adjacent to and borders along and near the east bank of said river, between said ferry and said state line, and at a distance of about one hundred feet from the center of the main channel of said river, and on the opposite side thereof from said levee, and being distant eastwardly from said levee from a quarter of a mile to three-quarters of a mile; that the natural banks of said river, on the western side thereof, where the river flows along said levee, are lower than the opposite, or eastern, bank thereof, where plaintiffs' said lands are located; that said river runs through a low, flat and practically level country, and is a winding stream; that the lands upon which said levee was built were frequently under water before the same was built, and during a portion of the year the lands last mentioned formed a part of the bed of said river, and the waters of said river escaped and passed down the river at frequent intervals, and at various seasons of the year, over the lands upon which said levee was built, thereby enabling said waters to escape and pass off and down said river without obstruction and more rapidly than they otherwise would.

"Aver that said levee constitutes an obstruction to said river and the flow of the waters therein and diverts

the waters of said river from the west side thereof out of their natural water channel and over, to and upon plaintiffs' said lands, to their great damage.

"Aver that the construction of said levee narrowed the channel of said river, and caused the water in said river to pile up and flow over the eastern bank of said river, from said levee, to and upon plaintiffs' said lands, to their great damage.

"Aver that the building and construction of said levee has entirely closed, cut off, and obstructed the high water channel, or flood channel, of said river or the west side thereof, thereby causing the waters of said river to be thrown over and upon plaintiffs' said lands; that before the location and construction of said levee, plaintiffs' said lands were dry and tillable and had been used for farming and agricultural purposes; that the location and construction of said levee has destroyed said lands for said purposes; that said destruction and loss resulted from throwing, or casting, the waters of said river over and upon said lands, and as a consequence of obstructing the channel of said river as aforesaid; that said waters have been, and still are, so cast over and upon said lands, for such periods of time, and at such seasons of the year, as to render them unfit for cultivation, and without value for agricultural purposes, and to the damage of the plaintiffs in the sum of thirty thousand dollars, for which, with costs of suit plaintiffs pray judgment."

There is no negligence charged nor want of lawful authority in defendant. The plaintiffs' case is bottomed on the theory that their property has sustained damage in consequence of the construction of the levee along

Grounds of Damage.

and on the west bank of the river; that this damage is for a public use within the meaning of Section 21, of Article 2 of the Constitution of this State; that this constitutional provision is self-enforcing, and that the damages are recoverable thereunder in any appropriate common-law proceeding.

There is controversy between the parties over the effect of the facts, as charged in the petition, and admitted by the general demurrer, and whether the defendant may invoke the rule applicable to overflow and surface water.

The demurrer admits the truth of all facts properly pleaded, and carries admission of all inferences that may fairly and reasonably be drawn therefrom. [Martin v. Ray County Coal Co., 288 Mo. 253; Rodgers v. Fire Insurance Co., 186 Mo. 255.] But upon **Demurrer.** this question the petition as a whole is to be looked to, and a demurrer does not admit as a fact that which the plaintiff contradicts (Searcy v. Clay County, 176 Mo. 493); and a statement made as conclusive or general, cannot be held to be unaffected by specific statements of particulars which necessarily enter into, and qualify or limit the general statement.

The petition deals first with particulars in describing the levee, the river and the lands. It alleges that the levee extends from Hodge's Ferry in a general southern direction for a distance of about twenty-five miles to the Arkansas line; that it is a construction "along and on the west bank of the St. Francis River;" that the levee is distant from plaintiffs' lands "from a quarter of a mile to three quarters of a mile;" that plaintiffs' lands bordering on the east bank are distant eastwardly "about one hundred feet from the center of the main channel of said river;" that "said river runs through a low, flat and practically level country, and is a winding stream;" that the land constituting the west bank of said river is lower than the land constituting the east bank; that the lands upon which the levee was built were frequently under water before the levee was built, and during a portion of the year formed a part of the bed of said river and "the waters of said river escaped and passed down the river at frequent intervals, and at various seasons of the year, over the lands upon which said levee was built, thereby enabling said waters to escape and

pass off and down said river without obstruction and more rapidly than they otherwise would.''

After the descriptive particulars, the petition has three averments, general in character, as of the results of the construction of the levee in the manner and at the place described. These are, that it constituted an obstruction of the river and diverted the waters of the river from the west side thereof out of their natural water channel; that it narrowed the channel and caused the waters of the river to pile up and flow over the east bank; that it entirely closed, cut off and obstructed the high water channel, or flood channel of said river on the west side thereof.

The particular statements are important in their bearing upon the general averments, and because defendant invokes the rule as to surface and overflow water, while plaintiffs insist that under the statements of the petition there is no basis for the application of that rule. There is contention as to whether there is or is not a flood channel, in fact, or in law.

The definition of a fresh-water river given in Gould on Waters is quoted with approval by this court in State ex rel. v. Longfellow, 169 Mo. l. c. 121, as follows:

''A fresh-water river, like a tidal river, is composed of the *alveus* or bed, and the water; but it has banks instead of shores. The banks are the elevations of land which confine the waters in their natural channel when they rise to the highest and do not overflow the banks; and in that condition of the water the banks, and the soil which is permanently submerged, form the bed of the river. The banks are a part of the river-bed, but the river does not include lands beyond the banks, which are covered in times of freshets or extraordinary floods, or swamps or low grounds which are liable to overflow, but are reclaimable for meadows or agriculture, or which, being too low for reclamation, though not always covered with water, may be used for cattle to range upon, as natural or uninclosed pasture. Fresh rivers, although not subject to the daily fluctuations of the tide, may rise

and fall periodically at certain seasons, and thus have defined high and low-water marks. The low-water mark is the point to which the river recedes at its lowest stage. The high-water mark is the line which the river impresses upon the soil by covering it for sufficient periods to deprive it of vegetation and to destroy its value for agriculture.''

When the definition is applied to a winding stream, described as having banks and flowing ''through a low, flat and practically level country,'' it does not reasonably imply the existence of a high water channel or flood channel. The plaintiffs contend that under the allegations of the petition it must be assumed here that the ''channel of the St. Francis River has been obstructed and narrowed.'' They say in their brief that the statement in the petition that ''the levee was constructed along and on the west bank of the river does not mean that the levee was not constructed in the channel of the river;'' and they argue that ''the word 'along' may just as properly mean in the channel as outside the channel.'' It would be unreasonable to give such a construction, in view of the ordinary meaning of the words, in their relation to the natural conditions described in the petition, and in their relation to the place, or course of construction, and the inevitable purpose of the levee as described therein. A levee on the west bank, and distant from one-fourth to three-fourths of a mile (less 100 feet) from the center of the main channel cannot be held to be in the channel.

In the case of Bruntmeyer v. Drainage District, 196 Mo. App. 360, a case particularly relied upon by plaintiffs, the allegations were, as set forth in the opinion, at page 363, ''that in the creation of its drainage enterprise, defendant constructed its system of drains, dikes, and ditches, and cut and intersected creeks and watercourses, thereby turning and diverting the waters therein from their natural watercourse and from the natural drainage thereof, and, after collecting said waters, conducted them by means of said drains and ditches to a

point or points near to plaintiff's land, which land was outside of said district, and there deposited them upon, or caused them to overflow, plaintiff's land to his injury and damage. In other words, the establishment of the district and its drainage system resulted in collecting the waters of creeks and other watercourses, and also surface water, and casting them in a volume upon plaintiff's land, which theretofore enjoyed its own natural drainage and was free from overflow.'' Upon that state of facts, the plaintiff owner of land outside of the district was held en·titled to recover by virtue of the constitutional provision mentioned. The petition in the instant case does not allege that plaintiffs' land was free from overflow before the construction of the levee, nor does it allege that defendant's levee collected the water of other streams, or surface water and threw it on plaintiff's land. It does allege, however, that the bank on the west side, is lower than the bank on the eastern side, where plaintiffs' land is. According to the petition this is the condition from Hodge's Ferry, where the levee begins on the north, to the Arkansas state line, a distance of twenty-five miles, ''through a low, flat and practically level country.'' According to the plaintiffs' petition, this is not an instance, as in Bruntmeyer's case, of collection of the waters of creeks and other watercourses and surface waters and their discharge in a volume through ditches upon plaintiffs' land; but, by this levee, waters which otherwise, at various seasons of the year, escaped over the western bank of the river and other lands on which the levee was built, were forced to flow upon the east side of the levee, and thereby was a greater flow over the east bank of the river in time of flood.

Another case cited by plaintiffs wherein recovery by the owner of land outside of the drainage district was sustained is Schalk v. Inter-River Drainage District, 226 S. W. 277, decided by the Springfield Court of Appeals. The decision in that case followed Bruntmeyer v. Drainage District, supra, upon the liability of the defendant district under the provisions of Section 21 of Article 2

of the Constitution.  Otherwise, and upon the merits, it was based upon the fact that the evidence tended to show that in times of flood the waters of Black River overflowed into a certain slough, constituting a natural watercourse, and one of the channels of Black River which connected with other sloughs and before the construction of a levee by the defendants conducted the water again into Black River.  The levee obstructed the flow of water in these sloughs, and caused it to be dammed up and to back over the plaintiff's land.  A similar situation was shown in Sigler v. Inter-River Drainage District, 257 S. W. 487, and a like holding was made, but that cause was certified to this court upon the ground that the decision was in conflict with what was said by the Kansas City Court of Appeals, in Arnold v. Worth County District, 209 Mo. App. 220.  The last named case, however, was one in which negligence was alleged in the construction of a bridge, and the holding was that there was no cause of action against the district, as a *quasi*-corporation and arm of the State, on account of the negligence of its officers.  This holding is in harmony with the holding of this court in State ex rel. Hausgen v. Allen, 298 Mo. 448, where the cases are reviewed by Judge GRAVES, and it was held that in the absence of a statute so declaring, a drainage district, as a governmental agency, was not liable for damages to lands within the district due to its negligence.  The Bruntmeyer, Schalk and Sigler cases are not grounded upon negligence, and the decisions therein rest upon the ground that the district, in the improvements made, had damaged plaintiff's property for a public use, and the plaintiffs were entitled to sue under the constitutional provision.  But each of the opinions in these cases proceeded also upon the theory, and upon facts showing, that the drainage district in the character of the improvements made, to protect lands from overflow, had gone beyond the common-law right in that regard.  The opinion in the Sigler case more especially does this.  That being held, the doctrine of *damnum absque injuria* could not well

apply in these cases as entering into the construction to be given to the word ''damaged'' as used in the Constitution.

The decision in the Bruntmeyer case follows the decision in Bradbury v. Vandalia Levee & Drainage Dist., 236 Ill. 36. Under a constitutional provision similar to Section 21 of Article II of the Constitution of this State, the Illinois court held that a suit could be maintained against the district, by the owner of lands outside of the district, caused to be overflowed by the construction of a levee along the river and from the river, to the bluffs or highlands, so as to cause the water to back on the property of the plaintiff farther up the stream. The court sustained the right to maintain such a suit under the constitutional provision, but the petition counted upon Section 2 of the act under which the defendant was incorporated, which provided that lands embraced in drainage districts should be liable, for any and all damages which might be sustained by any levee, ditch or drain in such district under the act. That section was in the nature of a legislative declaration applying the rule of the Civil Law to drainage districts. The court said: ''Under the rule of the Civil Law adopted by this court, the right of drainage is governed by the law of nature, and the lower proprietor cannot do anything to prevent the natural flow of surface water and cast it back upon the land above; and this court recognizes no distinction between surface waters and those flowing in a natural watercourse.''

It was held that an aggregation of landowners voluntarily accepting the benefits of the act could not do what an individual landowner (under the Civil-Law rule) could not do. It was held that the organization of the district and proceeding thereunder was not an exercise of the police power. Its *status* was defined as that of a *quasi*-public corporation ''organized upon the petition of a majority of owners of lands in the belief that they would be benefited by the organization,'' and on the theory that ''they have privileges conferred upon them

at their request which are a consideration for the duties imposed upon them." In this State the view held has been that the power to drain swamp and overflowed lands is referable to the police power of the State; that drainage districts are political subdivisions of the State, to be classed with counties, road districts and school districts, and the private benefits accruing to the individual landowners are regarded as incidental. [State ex rel. Caldwell v. Little River Drainage Dist., 291 Mo. 73; Morrison v. Morey, 146 Mo. 543; Land & Stock Co. v. Miller, 170 Mo. 240; State ex rel. Hausgen v. Allen, 298 Mo. 448; State ex rel. Kinder v. Drainage District, 291 Mo. 267.]

In this State, too, the common-law rule as to surface water and overflow waters is in force. [Adair Drainage Dist. v. O. K. Railroad Co., 280 Mo. 244, 252; Goll v. C. & A. Railroad Co., 271 Mo. 655; Inter-river D. Dist. v. Ham, 275 Mo. 384; Cox v. Hannibal & St. J. Ry., 174 Mo. 588; Abbott v. Railroad, 83 Mo. 271; Thompson v. Railroad, 137 Mo. App. 62; Applegate v. Franklin, 109 Mo. App. 293; Mehonray v. Foster, 132 Mo. App. 229; Johnson v. Leazenby, 202 Mo. App. 232.]

The drainage district is not a landowner, but under the common-law rule in force in this State no reason is perceived why the drainage district, as a governmental agency could not do, in a collective and representative capacity, for the State and for the lands embraced within the district, what individual landowners could do under that rule.

The essential complaint of the petition is that the construction of the levee prevented the waters from escaping over the lands where the levee was built, whereby there was increased height of the water on the east side of the river, and consequential damage. There is in the petition the statement that the lands lying on the east side of the river between Hodges Ferry and the state line, or most of said lands, slightly or gradually fall eastwardly from the eastern bank of said river, from which it may be inferred that most of said lands were affected

by the increased height of the water. Under the rulings of this court in Goll v. Railroad, Ham v. Drainage District, Adair Drainage District, and others cited above, this court is committed to the doctrine that overflow water from a stream is surface water, and that one proprietor of lands has the right to shut off such surface water from his land without being liable to another proprietor for the damage thus caused. Under the declared powers and purposes of drainage districts the rule must be held to apply where the district as a governmental agency shuts off such overflow or surface water from the lands embraced with its boundaries.

It is conceded here by plaintiffs that the power to drain swamp and overflow lands is referable to the police power of the State. The essential contention is that the exercise of the police power cannot extend to anything expressly or impliedly forbidden by the Constitution, and cannot be made a cloak to destroy constitutional rights. [City of St. Louis v. Public Service Commission, 276 Mo. 509; State v. Julow, 129 Mo. 163; State v. Mo. Pac. Railroad, 242 Mo. 339; State v. Smith, 233 Mo. 242.] Next, it is insisted that the plaintiffs' property has been damaged for a public use. [Houck v. District, 248 Mo. 373; State ex rel. v. Drainage District, 269 Mo. 458; Carder v. Drainage District, 262 Mo. 542; State ex rel. Caldwell v. Drainage District, 291 Mo. 72; State ex rel. Hausgen v. Allen, 298 Mo. 448.] Attention is directed to the holding in St. Louis v. Railroad, 272 Mo. 80, that the words "or damaged" placed in the Constitution after the word "taken" broaden the field of consequential damages where there is no physical taking.

The constitutional provision was applied in Drainage District v. Ham, 275 Mo. 384, on exceptions filed in the proceeding to condemn land and assess damages. The proposed levee bisected the exceptor's land, and left a part of it between the levee and the St. Francis River. The right to compensation for injury to the land thus cut off was sustained. The determinative facts were that the district was not a landowner, but was seeking

to condemn a part of the exceptor's land. The land affected was contiguous to the right of way and the damage immediate. In Bungenstock v. Nishnabotna Drainage Dist., 163 Mo. 198, the land in question was outside the district, and the defendant was charged with unskilfulness and negligence in carrying out the plan. Of that case it was said, in State ex rel. Hausgen v. Allen, 298 Mo. 1. c. 459, in distinguishing it from the case then under consideration: "There the land damaged was outside the district. There the district had condemned a right-of-way over the land not in the district, for its ditch, and had paid the damages assessed against it in favor of the landowner. After all this, by negligent conduct and by a negligently devised plan, the land of this owner was further damaged. The question was not so much a question of negligence as it was the further appropriation of plaintiff's property to a public use, without compensation." The opinion in Hausgen's case discussed at some length the *status* and nature of drainage districts, as "legislative agencies, exercising exclusively governmental functions," quoting in that connection the utterances of Judge Ragland in the Caldwell case and of Judge White in the Kinder case.

The Bungenstock and Ham cases, as also the Hausgen case, are, in their respective facts, materially different from the case at bar. In the instant case the defendant district did not exercise and is not attempting to exercise the power of eminent domain in respect of plaintiffs' property; negligence is not charged in plan or construction, nor infliction of unnecessary damage. The courts have not infrequently discussed the respective nature of the police power and of eminent domain, and somewhat their relation to each other, in their application in a given case to the question whether the property owner was entitled to compensation. In the concurring opinion of Judge Graves in State ex rel. Penrose Investment Co. v. McKelvey, involving the St. Louis Zoning ordinance, 301 Mo. 1. c. 22, it was said:

"In a broad sense no property or property right can be taken from the individual except through the police power of the State. This power may be exercised to abate a nuisance, to restrict the uses of property to lawful and non-deleterious purposes, or to take private property, or rights growing out of property, for public use upon payment therefor. In other words, eminent domain is but a limited use of the police power of the State. I know that cases and text-writers distinguish between the police power and eminent domain, but in ultimate analyses the basic principle of eminent domain is the inherent police power of the sovereign State. So that, in my judgment, eminent domain is but the limited exercise of the police power. So that in some cases rights in property may be limited, through the police power, without compensation, whilst other cases require compensation."

In Gray v. Reclamation District, 163 Pac. 1024, the Supreme Court of California dealt with the same subject under a constitutional provision similar to ours, and in a case where the facts presented substantially the issue before us in this case. That court after statement of facts said, at page 1032:

"But that work of the character here enjoined is work done under a legitimate exercise of the police power, and that the damages which will result from it, such as are here contended for, are damages for which the owner of the land is not entitled to compensation, is, without the slightest conflict in them, established by all authorities, Federal and State, at least where the consitutional provision forbids merely a taking. Our own cases, such as Green v. Swift, supra, and the cases, of the Supreme Court of the United States, such as the Jackson case and the Cubbins case, supra, are the only references which need be made to support this incontestable declaration.

"Such being the case, the final query upon this subject-matter is this: Has the amended provision in our Constitution, providing that private property may neith-

er be taken nor damaged for public use without the pre-payment of compensation, limited and abridged the exercise of the police power of the State in its efforts directed to the abatement of this great public nuisance?

"Has it limited and abridged the exercise of the police power, which, by an adopted definition, this court has declared to be in its final analysis 'the power to govern'? [Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 694, 151 Pac. 398.] Much has been said by the courts about the broad, the obvious distinction between the police power and the power of eminent domain. We will not unnecessarily enmesh ourselves in the intricacies of exact definition. Indeed, we think that so far as these powers meet and overlap, no precise definition can be given. But this much is incontestably true: Where the police power is legitimately exercised uncompensated submission is exacted of the property owner if his property be either damaged, taken, or destroyed. In the exercise of the power of eminent domain, compensated obedience for the taking or damaging of his property is the owner's constitutional right.

"The problems do not arise from any similarity in the nature of the powers themselves. They arise in each case from the difficulty of determining whether or not the asserted exercise of the police power is but a disguise for evading the private owner's rights, with the result that his property is taken or damaged without compensation in a case where compensation is called for.

"But while it is unquestionably true that the addition of the word 'damaged' to our constitutional law governing the exercise of the right of eminent domain gives in many instances a right to compensation which did not formerly exist, it did not, touching the exercise of the police power, give a right of action for damages which theretofore were *dammum absque injuria.*"

The question in issue in its bearing upon the provisions of the Constitution of the United States is discussed in Jackson v. United States, 230 U. S. 1; Hughes v. United States, 230 U. S. 24, and Cubbins v. Mississippi

River Commission, 241 U. S. 351. The summary of the holding of the Federal courts is given in 5 Encyclopedia of the U. S. Supreme Court Reports, page 612:

"Private interests are subservient to the right of the State in the exercise of the police power to carry out a system of drainage designed to benefit and protect the public health from the injuries arising from swamp and overflowed lands, and except where property is taken for which compensation must be paid, such interests must give way to any general scheme for the reclamation or improvement of such lands. The drainage of large bodies of swamp and overflowed lands, even though done for the purpose of reclaiming them for agricultural purposes, and not for the purpose of promoting the public health, is a public purpose and a proper exercise of the police power of the State, and damages resulting to property through the carrying out of such a scheme are *damnum absque injuria,* and do not constitute a taking of property under the Fourteenth Amendment."

In McCoy v. Board of Directors of Plum Bayou Levee Dist., 95 Ark. 345, the suit was by an owner of lands situated between the Arkansas River and the levee, and under a constitutional provision like that of the Missouri Constitution. The court after setting forth in detail the physical conditions dealt with, said, at page 349:

"The question is therefore presented whether or not, for the protection of lands from inundation by the flood waters of a river, a levee may rightfully be built across depressions, swales and low places so as to prevent the escape of the flood water into surrounding low lands sought to be protected; and also whether or not, in order to prevent the spread of flood water and to protect lands which would otherwise overflow, the building of a levee which has the effect of raising the water higher on the lands between the levee and the river calls for compensation to the owner of such lands thereby damaged.

"The solution of these questions is not free of difficulty, and there are but few decisions of the court which

shed much light on them. The first inquiry would seem to be as to the characterization of flood waters overflowing a stream, to return again as they recede—whether they should be treated as surface water or as running water of the stream. But we are not sure that such an inquiry is essential to a solution of the question now presented, for, without calling it surface water, we may treat it, like surface water or the waters of the sea, as a common enemy which any landowner or body of landowners or public agency may defend against without incurring liability for damages unless injury is unnecessarily inflicted upon another which, by reasonable effort and expense, could be avoided. [Little Rock & Ft. S. Ry. Co. v. Chapman, 39 Ark. 463; Baker v. Allen, 66 Ark. 271.]''

The cases of Kansas City, M. & B. Railroad Co. v. Smith, 72 Miss. 677, and Lamb v. Reclamation District, 73 Cal. 125, are extensively quoted. The plaintiff was denied a recovery. It was said, at page 352: ''We conclude that, upon the state of facts which the jury could have found under the instructions of the court to exist, the defendant could rightfully construct the levee in the manner described without liability to plaintiff for damages. It is insisted, however, that a distinction should be made because of the provision of our Constitution that 'private property shall not be taken, appropriated or *damaged* for public use without just compensation therefor.' [Art. 2, 22, Constitution of 1874.] In reaching the conclusion above announced, we are not unmindful of the constitutional provision; but where no right has been violated, there is no injury for which the law affords compensation. It is a case of an injury without damages. [Lamb v. Reclamation District, supra.]''

This court is committed to the doctrine that drainage districts exercise governmental functions; that they perform no private or proprietary functions; that their existence and granted powers are referable to the police power of the State. In the instant case plaintiffs proceed upon the theory that the building of the levee was a lawful act, but that as a result of it their lands

are damaged for a public use within the meaning of the Constitution. No statutory provision authorizes their suit, but, it must be conceded that if the injury alleged is a damage within the constitutional provision, that provision is self-enforcing. [Householder v. Kansas City, 83 Mo. 488; McGrew v. Paving Co., 247 Mo. 560.]

The making of just compensation is an essential condition of the exercise of the power of eminent domain, but making compensation for an injury has never been an inevitable condition of the exercise of the police power. [Tranbarger v. C. & A. R. R. Co., 250 Mo. 46, 238 U. S. 67.; St. Louis Gunning Co. v. City of St. Louis, 235 Mo. 99; State v. Mo. Pac. Ry. Co., 242 Mo. 339; C. B. & Q. R. R. v. Illinois, 200 U. S. 561; Gray v. Reclamation District, 163 Pac. 1031; Chicago v. Washingtonian Home, 289 Ill. 206.]

We conclude that the defendant as a governmental agency of the State has done no more than an individual, or a number of individuals collectively, might have done without incurring liability to the plaintiffs; that the construction of its levee under the circumstances alleged was a legitimate exercise of the police power of the State; that the injury alleged is not a damage sustained within the meaning of the constitutional provision; and that, in the absence of statutory authority, the defendant district is not liable.

The judgment should be affirmed. *Seddon, C.*, concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. *Ragland, P. J.*, and *Graves* and *Woodson, JJ.*, concur; *Atwood, J.*, not sitting.