HUGH E. THOMPSON, Respondent, v. CHICAGO,
MILWAUKEE & ST. PAUL RAILWAY COM-
PANY, Appellant.

Kansas City Court of Appeals, May 17, 1909.

1. EASEMENTS: Owner's Rights: Improvements: Damages. The
owner of land has the right to remove improvements and erect
new ones for his legitimate purposes, and to create a liability
therefor there must exist some abuse of his lawful right to
use his property as he would. An injury resulting alone from
lawful use is *damnum absque injuria*.

2. WATER AND WATERCOURSES: Surface Water: Rights and
Duties: Improvements. Surface water is a common enemy
which every owner must fight as best he may and when one of
the natural and incidental results of improvements is to divert
surface water to a neighbor's injury such consequence is
*damnum absque injuria* since the proprietor may lawfully give
the water a new direction. The owner of the servient estate
has no right to demand protection from his neighbor, but must
keep diverted surface water from his own land.

Appeal from Jackson Circuit Court.—*Hon. Henry L.*
*McCune,* Judge.

REVERSED.

*Frank Hagerman* and *Kimbrough Stone* for appel-
lant.

(1) Verdict against evidence. Applegate v.
Franklin, 109 Mo. App. 293; Webb v. Carter, 121 Mo.
App. 147; Cox v. Railroad, 174 Mo. 588; Abbott v. Rail-
road, 83 Mo. 271; Hosher v. Railroad, 60 Mo. 329; Mun-
kers v. Railroad, 60 Mo. 334; Railroad v. Renfro, 52 Kan.
237, 34 Pac. 802. (2) Act of God. James v. Rail-
road, 69 Mo. App. 431; Murphy v. Gillum, 73 Mo. App.
487; Ellet v. Railroad, 76 Mo. 518.

*Edward D. Ellison* and *Rees Turpin* for respondent.

(1)   It appears conclusively from the evidence in this case that no question of fighting surface water or of diverting it for the protection of the owner's land is involved. (2) The injury to respondent's building was not caused by an Act of God.

JOHNSON, J.—This is a suit to recover damages alleged to have been caused by the wrongful diversion of surface water.   Verdict and judgment were for plaintiff in the sum of $700, and the cause is here on the appeal of defendant.   The injury occurred September 9, 1903.   Plaintiff owned lot 4, block 9, Depot Addition to Kansas City.   The lot is in the West Bottoms, has a frontage of forty feet on Liberty street, extends west from that street 126-1.2 feet to the alley and was covered by a two-story brick business house which plaintiff used as a warehouse.   The lot adjoining on the south (Lot 5) was owned by a stranger to this suit and had a small dwelling-house on the east end facing Liberty street. The land immediately south of Lot 5, and between Liberty street and the alley, was owned by defendant. This tract, which was about nine hundred feet long (north and south) and 126 1-2 feet wide, had been acquired by defendant for the purpose of constructing thereon a freight depot and auxiliary railroad tracks. The lands described are on a plain, level in appearance, but which slightly declines towards the north so that in its natural state the drainage of surface water from defendant's tract was towards the lot owned by plaintiff.

At the time defendant purchased it, the land was divided into lots fronting on Liberty street.   Most of these lots had small dwellings on them, and division fences and other improvements had obstructed the natural flow of surface water and drained it from each lot either into Liberty street on the east or into the alley

on the west. Defendant removed these houses and improvements, roughly leveled the surface of the whole tract, and then built a freight house, three hundred feet long (north and south) by forty feet wide, the north end of which was thirty feet south of the south line of Lot 5, and the east wall ten feet west of the west line of Liberty street. Defendant also built four switch tracks west of this building. Three of them were placed as close together as practicable, but the fourth was laid 31 feet west of the third, in order to leave a space for the use of truck and other freight wagons, and it was the intention of defendant, afterward carried out, to pave the space between the third and fourth tracks, but this had not been done at the time of the injury, for the reason that the construction of the improvements had not been completed but was still in progress. The switch tracks had all been laid and surfaced. They were about six hundred feet long and ended at the north end of the depot building. The spaces between them were lower than the tracks and, as the event demonstrated, these spaces, particularly that between tracks 3 and 4, served as water courses which drained to the north all the surface water that fell on the area between the street and alley and between a point thirty feet south of Lot 5 and a point about six hundred feet south thereof. We copy on next page a plat of the ground which will aid in making the situation plain.

An unusually severe rainstorm began early in the morning of the day of the injury and continued more than seventeen hours. Almost five inches of water fell, the heaviest precipitation occurring during an hour in midafternoon. A large volume of water ran down the space between the third and fourth tracks, crossed Lot 5, and threw itself against the south wall of plaintiff's building, with the result that a large part of the wall fell during the night. This suit is for the recovery of the resultant damages to plaintiff. It is alleged in the petition:

FREIGHT HOUSE AND
TRACKS CHICAGO
MILWAUKEE AND
ST PAUL RY

Scale 50'·1"

"That during the spring, summer and fall of the year 1903, defendant negligently and carelessly made and constructed three embankments about five (5) feet in width on its land hereinbefore described, extending northerly and southerly near the middle of defendant's said land, the same being between said alley and defendant's said building and extending farther south than defendant's said building, and to a length of about six hundred (600) feet; that between said embankments and between defendant's said building and one of said embankments defendant negligently made and constructed trenches or ditches running the full length of said embankments and in the same direction with them; that said trenches or ditches varied in width from three (3) feet to thirty (30) feet, and in depth from six (6) inches to eighteen (18) inches; that said embankments and said ditches ran at right angles to the south wall of plaintiff's building hereinbefore described, the north end thereof being at or near the north line of defendant's said property; that prior to the construction of said embankments and of said ditches and trenches the rainfall and surface water was distributed over defendant's said land, and was not accumulated in any one place, and was not discharged in a body or volume upon the property of plaintiff, but said embankments and ditches caused the rainfall upon defendant's said land to be accumulated and collected in said trenches or ditches and caused the water to run in a body or volume through said trenches or ditches over defendant's said land and on plaintiff's property and caused the same to flow and be discharged in a body or volume upon plaintiff's said land and against plaintiff's said building; that on account of the negligent acts of defendant as aforesaid in negligently constructing said ditches and embankments, large quantities of rain fell and surface water was negligently collected by defendant in said ditches on the 9th and 10th days of September, 1903, which flowed in a volume and with a swift current

through said ditches, and defendant negligently discharged the same in a body on plaintiff's said land and against the south wall of plaintiff's said building."

During the trial, plaintiff added the following averment in an amendment to the petition: "And the defendant negligently failed to divert and conduct the water so collected on its property either to Liberty street on the east or the alley on the west or to the sewer and negligently maintained a heap of earth on its land between its building and the north line of its property which prevented the water so collected from flowing to said street." The evidence shows that the "heap of earth" mentioned in this last quotation had no practical effect on the course taken by the water, because of the fact that the elevation of Liberty street was higher than that of the land west of the street.

The sole issue of negligence submitted to the jury in the instructions given was that contained in the allegation that defendant "negligently failed to divert and conduct the water so collected on its property either to Liberty street on the east or the alley on the west or to a sewer." In the view we take of the law of the case, the question for discussion of vital concern is whether this issue should have been sent to the jury as one of fact. If this question receives a negative answer—and we think it should—then the court should have sustained defendant's request for a peremptory instruction. Plaintiff argues that defendant, as the dominant proprietor, had no right in the improvement of its property to collect surface water from rainfalls into ditches and precipitate it in a body on the servient land of plaintiff; that the primal principle that one must so use his own as not to injure his neighbor laid the duty on defendant of exercising ordinary care to guard against the diversion of surface water on to the land of plaintiff, in a volume and manner to inflict injury; that defendant should have anticipated that if the spaces between the tracks were not provided with lateral drains, a heavy rain might

produce the very injury that befell and, therefore, that as the work of constructing the tracks progressed, defendant should have opened lateral drains to carry the water either into the street or into the alley whence it would have found its way to a public sewer. The acts that resulted in the diversion of the surface water were done by defendant on its own premises in the lawful exercise of proprietary right. The owner of land has the right, as one of the incidents of ownership, to improve his property in his own way for any lawful purpose, subject only to the restriction that he must not wantonly, recklessly, or even negligently use his own in a way to injure his neighbor. Defendant, as an owner, had the right to remove the improvements on its land and to erect its depot and switch tracks thereon, and its duty and liability to its neighbor are to be measured by the rules that apply to a private owner who improves his land for his own legitimate purposes. [Railway v. Renfro, 34 Pac. 802.] The mere fact that an improvement erected by an owner on his premises may inflict an injury to the adjoining property, of itself, does not create a liability on the part of the owner to recompense his injured neighbor. To create a liability there must exist some abuse of the lawful right of an owner to use his property as he would. If the injury results alone from the exercise of a right of ownership, it is *damnum absque injuria*. But if the right be exercised in a wanton, reckless or negligent manner and such perversion causes the injury, then the actor becomes a wrongdoer, since he violates the maxim *"sic utere tuo ut alienum non laedas."* Thus, the owner of a city lot may erect thereon a tall office building that overtops the adjoining buildings and renders them less valuable. For such injury, the owners of the adjoining buildings have no cause of action, for in making such improvement, the owner of the office building has but used his own in a proper manner. But if in the construction of his building, he suffers material to fall on and damage his neighbor's building, or if he

install gutters and pipes that collect the surface water from his building and throw it in a body on his neighbor's property with injurious results, he is liable in damages for the consequences of such acts, since they are not necessary to the proper enjoyment of his own lawful right and should be classed as a wanton, reckless or negligent invasion of the rights of another.

The common law rules relating to surface water were prompted by the fundamental principles just stated. The most general of· these rules is that surface water is a common enemy which every owner must fight as best he may and that if one of the natural and incidental results of the construction of improvements on his premises by an owner is to divert surface water to a neighbor's land in injurious quantities, such consequence is *damnum absque injuria,* because the proprietor who obstructs the flow and gives to the water a new direction is acting within the strict observance of a legal right. [Schneider v. Railway, 29 Mo. App. 68.] The rule that forbids the dominant proprietor from draining his land by collecting the surface water into a body and precipitating it on the servient land does not apply to cases where the diversion results not from such wanton or reckless act but is merely incidental to the improvement of the premises in a proper manner. If the surface of the earth was necessarily changed and the currents of surface water were interrupted and diverted by switch tracks laid by defendant in the ordinary and usual manner, that was a result reasonably to be expected by plaintiff, the servient proprietor, as one of the necessary effects of the exercise of a lawful right by defendant, the dominant proprietor, and it became the duty of plaintiff to guard his property against the surface water thus diverted. He had no right to demand protection of his property at the hand of his neighbor. To say that defendant at its peril was bound to see to it that no surface water diverted from its course by the change in the surface of the ground found its way to plaintiff's prop-

erty, would be to abrogate the fundamental rule that everyone must fight surface water from his own property and to substitute for that rule the doctrine that an owner when he changes the flow of surface water by merely improving his premises must protect his servient neighbor's land against the invasion of such diverted water. The rule of the common law is too just and too well grounded in our jurisprudence to be thus emasculated. Since it appears beyond question that the work done by defendant was performed in the ordinary way and was unaccompanied by any abuse of a lawful right, we think plaintiff's damages were caused by his own fault in not guarding his building against the surface water which he must have anticipated might be precipitated against it.

In addition to the authorities cited, others consulted may be found in the briefs of counsel. We are cited by plaintiff to no authority at variance with the views expressed. It follows that the judgment must be reversed. All concur.