## GEORGE BRILL, Respondent, v. MISSOURI, KANSAS & TEXAS RY. CO., Appellant.

### Kansas City Court of Appeals, February 19, 1912.

1. **WATERCOURSES: Change of Course: Riparian Rights.** If an artificial channel is substituted for a natural one, or is created under such circumstances as indicate that it is to be permanent and to be a watercourse the same as though it was created by nature, riparian rights may attach to it.

2. ———: ———: ———: **Obstruction.** In order to make the rule governing the obstruction of watercourses applicable in any case, a watercourse must be found to exist. But if a water-course, in fact, exists, the fact that it is not an ancient one will not confer a right to obstruct it. And the rule is not changed by the fact that the water was flowing in an artificial channel.

3. ———: ———: ———. If, by common consent, a ditch was dug as a neighborhood drain and has remained open as a watercourse for a series of years, it ought to be governed by the same rules that apply to the cases of other watercourses.

4. ———: ———: ———: ———. Although a watercourse was artificially constructed, it may be rightfully located and maintained. Everybody whose property was liable to be affected by setting back the water had a right to exemption from disturbance by an interference with its flow. It is immaterial whether the plaintiff had acquired rights by prescription. The liability of the defendant in reference to obstructions caused by it which would naturally injure the plaintiff's property was the same as it would have been if the parties had been riparian proprietors upon a natural watercourse.

5. ———: ———: ———: ———. A railway company dug a ditch along its right of way to a point within fifteen feet of a creek. In the course of years this space was washed out and the principal part of the water flowing in the creek thence afterwards passed through the ditch. Then the railway company dammed the ditch where it connected with the creek, but the water still found its way into the ditch by cutting around the dam. The railway company then built an extension of the dam. The diversion of the water into the ditch caused the bed of the creek below the ditch to partially fill up and when the dam was built forcing the water back into the creek, its outflow was obstructed and it backed up on plaintiff's crops and destroyed them. It was held that the railway company was liable in damages.

Appeal from Howard Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*Lee W. Hagerman* for appellant.

. *S. C. Major* and *W. M. Williams* for respondent.

ELLISON, J.—Plaintiff is the owner of a farm near to defendant's railroad track. A creek was close by. A part of the farm was pasture land and a part he had planted in corn. The pasture was injured and the corn destroyed by water which he charges defendant caused to flow over it, and this action for damages. resulted. The judgment in the trial court was for plaintiff.

The petition alleges that about the year 1870 defendant dug a ditch from a point where the creek crossed under its railway track, near plaintiff's land, to a point south where it again entered the creek, and thereby changed the natural course of the water from the creek to the ditch, and so it remained for more than thirty-five years prior to flooding plaintiff's land, in 1907. That in consequence of this, the bed of the creek filled up to such extent as to be insufficient to carry off the water that naturally would flow through it in times of high water. It is further alleged. that defendant, in the spring of 1907, constructed a dam across the north end of the ditch at the place where the creek emptied into the ditch, thereby preventing the water from flowing through, as it had since the ditch was dug, and thereby causing the water to back up and stand on plaintiff's land, in consequence of which the crops, etc., were destroyed.

The evidence for the plaintiff tended to prove that the ditch at first lacked some fifteen feet of connecting with the creek. But in times of high water

a connection was, in the course of years, finally washed through and the waters of the creek continuously thereafter largely, but not altogether, were diverted to and passed through the ditch instead of passing in the creek. The effect of this was to partially fill up the bed of the creek with sediment, willows and other obstruction. Then in 1904, defendant (perhaps for the purpose of protecting some other landowner) constructed a dam by driving piles and boarding up across the end of the ditch for the purpose of keeping the water out of the ditch and throwing it again in the creek for its southerly flow. In periods of extended wet weather the dam proved insufficient, and water from the creek began to cut or run around it. Then defendant, in the spring of 1907, extended it, thus more effectually diverting the water from the ditch and causing it to flow on in the creek over the partially obstructed channel or bed which had been caused by former diversion of the water into the ditch. The effect of this was to cause water to overflow plaintiff's lands. That while water had gone over the lands before this, it would run off in such short time as not to injure crops, but the effect of the obstructions here set forth was to cause it to come over in larger volume and stay on long enough to destroy them.

The case may be thus stated: Defendant constructed a ditch near its roadway, up to a point a few feet from a creek which was a natural watercourse. In course of time overflows from the creek cut away this space so as to permit the principal part of the water, naturally finding outlet through the creek, to flow through the ditch and finally find its way back into the creek a considerable distance further down. That the diversion of a large part of the water from the creek caused the bed to partly fill up and become obstructed. That after thus running in the ditch for several years, the defendant put a dam across it up

where the water entered from the creek. That then the water began and continud to cut around the dam, until defendant, in the course of about three years, built an extension. That by thus building the dam after the waters had for years, in great part, left the creek, and thereby forcing them back into the creek, which in the meantime had become obstructed, they · were made to flow or back upon plaintiff's land.

It is thus seen that defendant, in damming the ditch, obstructed an artificial watercourse, which had the resulting effect to injure plaintiff's crops. The law is stated to be that:

"If the artificial channel is substituted for a natural one, or is created under such circumstances as indicated that it is to be permanent and to be a watercourse the same as though it was created by nature, riparian rights may attach to it." [3 Farnham on Water and Water Rights, p. 2430, sec. 827b.]

The same author (2 vol., p. 1837, sec. 575) again states that:

"In order to make the rule governing the obstruction of watercourses applicable in any case, a watercourse must be found to exist. But if a watercourse, in fact, exists, the fact that it is not an ancient one will not confer a right to obstruct it. And the rule is not changed by the fact that the water was flowing in an artificial channel."

Judge Cooley said, in Freeman v. Weeks, 45 Mich. 335: "If, by common consent, the ditch was dug as a neighborhood drain and has remained open as a watercourse for a series of years, it ought to be governed by the same rules that apply to the cases of other watercourses."

In Babbitt v. Safety Fund Nat. Bank, 169 Mass. 361, the court said: "Although the watercourse was artificially constructed, it may be rightfully located and maintained. . . . Everybody whose property was liable to be affected by setting back the water had

a right to exemption from disturbance by an inter-
ference with its flow. It is immaterial whether the
plaintiff had acquired rights by prescription. The
liability of the defendant in reference to obstructions
caused by it which would naturally injure the plain-
tiff's property was the same as it would have been
if the parties had been riparian proprietors upon a
natural watercourse.''

And the same is decided in Missouri Pacific Ry.
Co. v. Keys, 55 Kan. 205.

The foregoing authorities backed as they are by
sound reason and justice, lead us to conclude that
plaintiff made a case for damages.

Defendant asked a peremptory instruction that
plaintiff could not recover, which was refused. Plain-
tiff's instruction was based on the evidence in his be-
half, and we cannot discover any objection to it. De-
fendant was given four instructions. A fifth one was
asked and amended by the court in an unimportant
though not improper particular. It submitted that
although the jury believed the jury believed the ditch
conveyed a portion of the waters of the creek in times
of high water and that such fact was in some measure
responsible for the filling up of the creek and by rea-
son thereof the overflow of water from the creek in
1907 backed upon and overflowed the land of the plain-
tiff, yet if the jury believed that plaintiff's loss was
occasioned ''not by such waters *being so backed up
and* remaining upon and killing said crops, but by
continued and excessive rain falls,'' etc., the verdict
should be for defendant. The words italicized were
interlined by the court, and we do not think it was
error. Three instructions offered by defendant were
refused; our reasons for approving of their refusal
appear in what we have written.

We do not go over the reasons assigned by de-
fendant in criticism of the judgment, and the argu-
ment based thereon, on account of the fact that what

we have written we think disposes of what is there said. It follows that the judgment should be affirmed. All concur.