# H. H. McGHAY, Respondent, v. GEORGE A. WOOLSTON et al., Appellants.

### Kansas City Court of Appeals, January 5, 1914.

1. **WATERCOURSES: Change of Course: New Stream: Obstruction.** Notwithstanding a stream of water has had a certain course in flowing from one lake to another, yet, if in time, by action of the elements or otherwise, its course is changed through the land of a person it had not before injured and after becoming a well-defined stream with defined banks and channel, such person puts a dam across it and digs a ditch leading to the land of another through which the water is diverted onto the other, he is liable in damages.

2. ——: **Natural Stream: Artificial: Elements: Damages.** A watercourse as known to the land need not be a natural one, or it may be formed by the elements; it may be artificial, and if, after becoming established with defined bank and channel, it should be obstructed so as to cause the water to flow upon lands otherwise free from it, a liability will arise for the damage done.

3. ——: **Prescription.** An artificial watercourse need not exist for such a length of time as to establish rights by prescription.

Appeal from Platte Circuit Court.—*Hon. A. D. Burns, Judge.*

AFFIRMED.

*Jas. A. Hull* and *Jas. W. Boyd* for appellants.

*Wilson & Wilson, Guy B. Park* and *A. D. Gresham* for respondent.

ELLISON, P. J.—Plaintiff's action was instituted to recover damages for destruction of his matured corn crop in 1911 alleged to have been caused by defendants building a dam across a watercourse known as Sugar Creek and diverting the flow of water onto plaintiff's land situated south of the point of obstruction. The judgment in the trial court was for the plaintiff.

There was evidence to show that plaintiff's land was south of different tracts of land owned by each of the defendants. We will designate these lands as defendants' without distinguishing between them. There was also evidence to show that defendants built a dam across Sugar Creek, a stream running through their lands, but not plaintiff's. In connection with this, defendants extended a levee to protect their lands from the overflow of water and also dug a ditch near and along this levee, the effect of which was to turn the water from its natural southwest course to Little Sugar Lake to plaintiff's land below, and destroy his crop. There was evidence to show (and it was an admitted fact) that plaintiff had built a levee on the north side of his land for the purpose of keeping the water diverted out of Sugar Creek by defendants from running directly upon him, though in this he did not succeed. Plaintiff was induced to build this as a means of protection from natural overflow water which sometimes came upon him in wet seasons, and also from the fact that he had heard of defendants intentions to turn the stream.

There was evidence to show that defendants first built the levee now in question across a portion of their land down to the north side of the creek, and then crossed over and extended it south quite a distance from the south bank, thus leaving the creek open between the two ends of the levee. They then dug a ditch six feet wide and three feet deep a little east of that part of the levee which was south of the creek. Then on the night of November 19, 1910, they constructed a dam across the creek by placing a large log across from bank to bank as a brace to boards, straw and dirt which they put in. At this time the creek was running a stream three feet deep and of varying width which was thus turned into the ditch and started on its course towards and upon plaintiff's land.

It appears that northwesterly of these lands is Big Sugar Lake and southeast of them is Bean Lake and that Sugar Creek flows from a northeasterly course through defendants' lands and thence in a southwesterly course into Little Sugar Lake and that that had been its course for several years prior to the time defendants constructed the dam that we have described. It is contended that formerly Sugar Creek did not empty into Little Sugar Lake, but its course, as offered to be shown by witnesses and its old bed, was from Big Sugar Lake on the northwest to Bean Lake on the southeast. From these and other considerations defendants insist that they did not commit a wrong in obstructing the water at the place and in the manner above shown. They undertook to file an amended answer (to which we shall presently refer) setting up, in detail, this fact and further that in 1907, an extraordinary rainfall had caused the creek to overflow its old channel, break through a levee then maintained and flow through their premises, and finally result in the channel of the creek being changed to a course through their land to Little Sugar Lake, where it seems it continued until they put in the obstruction of which plaintiff complains. That where this overflow occurred they immediately began to reconstruct the levee but were enjoined by a temporary injunction granted by the probate court. That thereafter for their own protection, they constructed the levee, dug the ditch, and dammed the stream which resulted in the injury to plaintiff.

Counsel ask, if a man awakens some morning to find a levee broken which has protected his lands from the overflow of a stream, shall he not have a right to set to and restore it? And that if wrongfully temporarily enjoined from doing so, has he not the right otherwise to protect himself? If we answer both these questions in the affirmative, it will not determine the plaintiff's case adversely. If defendants had a right

to immediately restore the levee along the old creek and if they were wrongfully enjoined from doing so, it does not follow that after the stream has been thus diverted for several years they may dig a ditch from the side of its new flow pointed down on plaintiff's land, and then immediately dam the stream and force its waters into the ditch, thence over plaintiff's crops. These were misfortunes of defendants which they ought not to unload upon plaintiff. The criticism of the various rulings made by the trial court refusing defendants' repeated offers of evidence are made in entire disregard of plaintiff's rights. It is of no importance where the creek once was, so long as the evidence showed that situation had changed and that a new stream with well-defined banks and channel had formed and had existed for several years when defendants obstructed it.

This brings us to the legal question involved. Defendants' case is really made to depend upon whether it is necessary that the new stream (if we may so call it) should have followed its course for ten years so that there would be a prescriptive right. We think not. We considered that question in Brill v. Railroad, 161 Mo. App. 472, and decided that if an artificial stream exists and is substituted for, or has taken the place of the natural one, it should not be obstructed. We quoted in that case the following from Babbitt v. Safety Fund Nat. Bank, 169 Mass. 361: "Although the watercourse was artificially constructed, it may be rightfully located and maintained. . . . Everybody whose property was liable to be affected by setting back the water had a right to exemption from disturbance by an interference with its flow. It is immaterial whether the plaintiff had acquired rights by prescription. The liability of the defendant in reference to obstructions caused by it which would naturally injure the plaintiff's property was the same as it would

have been if the parties had been riparian proprietors upon a natural watercourse.''

The change of the course of Sugar Creek southwest into Little Sugar Lake was through well-defined banks which had existed for several years; the waters of the stream, as we have already said, were three feet deep and were there stated to be wide enough for the use of row boats thereon. The court and jury could well consider that it had become substituted for the old stream. It abundantly filled the definition of a watercourse as found in Benson v. Railway Company, 78 Mo. 504, 514; Webb v. Carter, 121 Mo. App. 147, and the recent case of Scott v. Railway Co., 158 Mo. App. 625.

A number of objections are made to plaintiff's instructions. Taken together we think them not subject to substantial criticism. The one on the measure of damages could not have been misunderstood by a jury of ordinary intelligence and defendants seem not to have asked any on that subject. Nor do we think instruction No. 7, connected with the others could have wrongfully affected defendants. The information given the jury as to what would constitute a watercourse was plain and proper. In fact, taking the case as the face of the record practically shows it, plaintiff was bound to prevail.

What we have said really covers defendants' objections to the court's disallowance of defendants' offer to file an amended answer. Besides the offer to file it was ill-timed which fully justified the court in exercising its discretion against the request.

It is said there was not sufficient evidence to connect defendant A. B. Woolston with acts charged by plaintiff. We think record shows there is.

We do not consider defendants have any ground of complaint at the remarks of the court in the progress of the trial. They were proper statements in the course of his rulings which, as we have seen, covered

the law of the case. There are other points made but the whole record satisfies us that no other verdict could have been reached and the judgment will be affirmed. All concur.