HARRY KEENER and IRENE KEENER v. ROBERT O. SHARP and LOYCE SHARP, Appellants.—111 S. W. (2d) 118.

Division Two, December 17, 1937

C. G. Shepard for appellants.

*Von Mayes* for respondents.

1194

TIPTON, J.—This case comes to the writer on reassignment. It was certified to this court by the Sprinfield Court of Appeals, because one of the judges of that court deemed its opinion, reported in 95 S. W. (2d) 648, to be in conflict with the holding of the St. Louis Court of Appeals in the case of Applegate v. Franklin, 109 . Mo. App. 293, 84 S. W. 347, and also with our holding in the case of Anderson et al. v. Inter-River Drainage & Levee District, 309 Mo. 189, 274 S. W. 448.

This is an appeal from the Circuit Court of Pemiscot County, Missouri, wherein that court enjoined the appellants from maintaining a water gate in a bayou which connects Morris Lake (or Big Lake) in that county with the Mississippi River. Morris Lake is a body of water two or three miles long and possibly a quarter of a mile wide, and lies between the levee of the St. Francis Levee District and the Mississippi River. The appellants own all the land extending from the west side of the lake east to the river. The respondents own land along the west side of the lake.

The bayou in question is one-half mile long with a winding course. It is about twelve feet in depth near the river and about ten feet in depth at the water gate, and is from twenty to thirty feet wide, tapering off in depth and width as it approaches the lake. On account of the overflow of the river, sediment collected and filled up the bayou where it connects with the lake, leaving it shallow, but still with well-defined banks and channel, so that, except in drought periods, water flows from the lake, through the bayou, into the river. When the river is at certain stages, its waters flow into and through the bayou in question to the lake, then when the river waters recede, the water runs out of the lake, through the bayou, into the river. A government survey of this region made in the year 1848 shows that this bayou was in existence at that time. The lands lying between the levee and the river in the vicinity of the lake consist of farms, tracts of timber, and bayous. Some distance north of this lake is a body of water known as Wolf Bayou, fifty or sixty feet deep, which has never been known to go dry. The surplus water of this bayou flows through

a chain of small bayous into Morris Lake, thence through the bayou in question and into the river. Morris Lake is rarely dry and never has been known to be except in extraordinary drought years.

The appellants purchased the land in this vicinity in 1925. At that time there was some valuable timber standing along the east edge of the lake. In order to be able to remove the timber, they dug a ditch, or rather, removed the sediment deposited in the bayou near its junction with the lake, so that the timber could be floated from the lake, through the bayou, to the river. That year Morris Lake went dry. Later, the appellants built a water gate in the bayou in question and maintained it so that water would rise in the lake, consequently raising the water on the respondents' land from twenty-two inches to four feet. The object of this proceeding is to compel the appellants to remove the water gate, thereby letting the water run off of respondents' land which they claim could be cleared and put in cultivation. For a more detailed statement of facts, see the opinion of the Court of Appeals.

The appellants' principal assignment of error is that the "water in Morris Lake as well as the overflow therefrom, is nothing more than surface water against which the landowner has the right to fight and change the conditions without being liable to be called to account by the adjoining landowners or anyone else. . . ."

"The law seems to be well settled in Missouri that surface water is a common enemy which every man may ward off his land and thus throw it on an adjacent or lower owner, provided he does not, in warding it off, unnecessarily collect it and discharge it to the damage of his neighbor. The law is also well settled that water merely overflowing the banks of a river during a flood or freshet and spreading out over the bottom lands is surface water and thus falls within the rule regarding same.

"It is also settled law in Missouri that a natural stream cannot be dammed up nor the waters from its beaten path or bed diverted to the damage of property without compensation therefor. The law as we have thus declared will be found in Goll v. Railroad, 271 Mo. 655, 197 S. W. 244; Inter-River Drainage Dist. v. Ham, 275 Mo. 384, 204 S. W. 723; Abbott v. Railroad, 83 Mo. 271, 53 Am. Rep. 581; Thompson v. Chicago, M. & St. P. Railroad Co., 137 Mo. App. 62, 119 S. W. 509; Walther v. City of Cape Girardeau, 166 Mo. App. 467, 149 S. W. 36; Munkres v. Railroad, 72 Mo. 514; Webb v. Carter, 121 Mo. App. 147, 98 S. W. 776; McGhay v. Woolston, 175 Mo. App. 327, 162 S. W. 292; Bruntmeyer v. Squaw Creek Drainage Dist., 196 Mo. App. 360, 194 S. W. 748." [Schalk v. Inter-River Drainage Dist., 226 S. W. 277, 1. c. 278. Also, see, Place v. Union Township et al. (Mo. App.), 66 S. W. (2d) 584.]

The important question to determine is whether or not the

bayou in which the appellants erected the water gate, which bayou connects Morris Lake with the Mississippi River, is a natural watercourse. If it is, then the appellants unlawfully dammed up this bayou.

In the case of Munkres v. The Kansas City, St. Joseph & Council Bluffs Railroad Company, 72 Mo. 514, this court approved the following definition of a watercourse:

"A watercourse is a stream or brook having a definite channel for the conveyance of water. It may be made up, more or less, from surface water from rains and melting snow, but after it enters into a channel and commences to flow in its natural banks, it is no longer to be considered surface water, and it is not essential that the water should continue to flow in such stream constantly the whole year round; it is sufficient if the water usually flows in such channel, though not continually. That is, to constitute a branch or stream there must be something more than a mere surface draining, swelled by freshets and melting snow, and running occasionally in hollows and ravines, which are generally dry. The water must usually run in a definite bed or channel, though it need not flow continually the year round. But although the water from high lands and hills may unite and form a stream with a definite channel, yet if it afterward ceases to remain a channel, but spreads out over the surface of low lands, and runs in different directions in swags and flats without any definite channel, it ceases to be a stream or watercourse."

We again approved the above definition in the case of Sigler v. Inter-River Drainage District, 311 Mo. 175, 279 S. W. 50. Recently the St. Louis Court of Appeals, in the case of Dardenne Realty Co. v. Abeken et al., 106 S. W. (2d) 966, quoted this definition with approval.

In the case at bar, the substantial evidence shows that the bayou in question is about twelve feet in depth near the river and about ten feet in depth at the place where the water gate is located, and that it tapers off in depth and width as it approaches the lake, but even there it had well-defined banks and channel, though not large, before the ditch was cut by the appellants. It also shows that it connects Morris Lake with the Mississippi River and that it contains running water most of the year, the volume depending upon the rainfall and the stage of the river.

■ Tested by the above definition, there is no doubt that the bayou in question is a natural watercourse, and as long as the water is confined in its channel, it is not surface water.

As previously stated, Morris Lake is from two to three miles long and about one-half mile wide, its depth varying from eighteen inches to seven feet, except in times of high water. It has well-defined banks and basin and is fed by rainfalls upon the adjacent land, as

well as water from both north and south by the Mississippi River. It also serves as an outlet for water from Wolf Bayou. It has been dry on only very few occasions, therefore, its water cannot be classed as surface water.

We do not believe the case of Anderson v. Inter-River Drainage & Levee District, supra, is in point. In that case the defendant had built a levee along the west side of the St. Francis River so that overflow waters would no longer overflow to the west but would overflow on the east side of the river channel, thereby damaging the plaintiff's land which was on the east side of the river. That case held that flood waters from a stream, after it left the channel, was surface water. In that opinion we find the following language: "This court is committed to the doctrine that overflow water from a stream is surface water, and that one proprietor of lands has the right to shut off such surface water from his land without being liable to another for the damage thus created."

Nor do we think the case of Applegate v. Franklin, supra, is controlling. In that case there were no well-defined banks to the lake in question, in fact, the banks or shores were "low, marshy, and scantily defined," and in normal stages the lake was dotted with numerous small islands, dividing it into separate smaller bodies of water. That court held that the water was surface water, and that the defendant, in draining the water, was "lawfully using and changing the face and surface of his own property, for which, properly and prudently performed, no action would lie at plaintiff's instance." While in the case at bar the lake and bayou in question have well defined banks, basin and channel, and the appellants did not erect the water gate to protect the overflow of water upon their land, but to hold the water in the lake for fishing purposes. In so doing, he backed water upon the land of the respondents.

As the water in Morris Lake and the bayou in question is not surface water, it follows that the appellants did not have a right to build the dam or water gate in question, thereby holding water on the land of the respondents. .

This case was certified to this court because the dissenting opinion of the Court of Appeals held the water in question to be surface water. We have ruled against this contention. We will not lengthen this opinion by discussing the other points raised in the appellants' brief, but we are satisfied that they are correctly ruled by the opinion of the Springfield Court of Appeals.

It follows that the judgment of the circuit court should be affirmed. It is so ordered. All concur.