Boyd T. CROLEY, Lois Tippett and Nancy Daniels, Plaintiffs-Respondents,

v.

Ralph O. DE WITT and Anna May De Witt, his wife, and Roy Thomas Myers, Jr., Defendants-Appellants.

No. 32789.

St. Louis Court of Appeals, Missouri.

June 14, 1968.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 4, 1968.

John B. Smoot, Memphis, Cohn & Lentz, Arthur B. Cohn, Waynesville, for defendants-appellants.

J. Andy Zenge, Jr., Dennis W. Smith, Canton, for plaintiffs-respondents.

GEORGE W. CLOYD, Special Judge.

Defendants-Appellants hereinafter referred to as defendants appeal from an order whereby defendants are permanently enjoined from permitting a dam or levee or any other type of obstruction to remain in and across a natural drainway. Defendants, their agents or servants were given five days to comply with the order.

Defendants contend that, plaintiffs' petition failed to state a claim upon which relief could be granted, and secondly, that plaintiffs failed in their burden of proof, in failing to show that there was a natural watercourse and that defendants failed to prove or establish sufficient facts to come within an exception to the "Common Enemy Doctrine".

Plaintiffs owned agricultural land bounded on the north and east by the Fabius River. On plaintiffs' southern boundary were the defendants, and property owned by a third party not involved in this litigation, known as the Iowa-Missouri Company. The Iowa-Missouri property was due west of defendants' property and plaintiffs' property lay to the north of defendants' property. The property of the Iowa-Missouri Company historically contained a slough

known as Woolf's Slough. Woolf's Slough contained nothing but surface water and had created a drainage problem for years. The plaintiffs' property was never in the past inundated by surface water. Prior to the plaintiffs' acquisition of the property, an 8″ tile from Woolf's Slough went north underground across plaintiffs' property emptying into the Fabius River. This tile is now stopped up. Two ditches, Ditch A and Ditch B have been constructed: Ditch A, upon property of Iowa-Missouri Company and Ditch B, on defendants' property. It is undisputed that Ditches A and B were connected and drained surface water from west to east into the Fabius River. There is a dispute as to when the ditches were connected. The evidence varies from as late as 1958 to as early as 1932.

Defendants by their admission made a small levee across Ditch A-B at a point near the western boundary of defendants' property, which concededly blocked the flow of water through Ditch A-B to the Fabius River. This levee or dam was constructed in 1965 and as a result water has now accumulated to a depth of 3 to 4 feet on plaintiffs' property and also on the property of the Iowa-Missouri Company. The water has prevented plaintiffs from farming half of their property. The accumulation of water is now greater and covers a larger area than when the water was originally known as Woolf's Slough. The water however, is basically in the same area as was Woolf's Slough.

Plaintiffs' petition alleges (paragraphs 4 and 5) a "natural drainway" existing across the plaintiffs' and defendants' property through which water drained eastwardly to the Fabius River; that defendants have constructed a dam which completely blocks the flow of water in the "natural drainway" causing the water to back up and accumulate on plaintiffs' property; that said action of defendants by obstructing the "natural drainway" is violative of plaintiffs' property rights and constitutes a continuing trespass all to plaintiffs' damage.

Defendants contend that the petition does not state a claim upon which relief could be granted because Ditch A-B was not a *natural watercourse* and since it was not and is not a *natural watercourse* it could be dammed because as surface water is a common enemy it may be cast upon the land of adjoining property owners (to their detriment).

Plaintiffs in their brief concede that they have not attempted to establish the existence of a *natural watercourse* in its natural state, and by definition of that term could not establish such fact. However, plaintiffs contend that it is not necessary for them to prove that the drainage was through a *natural watercourse*. Plaintiffs maintain that they are entitled to maintenance of the drainage from their land without interference from the defendants through a "NATURAL DRAINWAY".

In determining if a claim upon which relief can be granted has been pleaded the court must admit as true the facts in plaintiffs' petition and we must give plaintiffs all of the fair inferences to the facts pleaded. Dowdy v. Lincoln National Life Insurance Company et al., Mo.App., 384 S.W.2d 282.

Defendants in their brief state: "Plaintiffs cannot bring suit on the theory of blocking a natural drainway, when the only possible legal principle is that of (blocking) a natural watercourse."

We would assume from this that if plaintiffs had alleged the word "watercourse" instead of "drainway", plaintiffs would have stated a cause of action. But assumptions aside, in Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698 1. c. 702, it was said that a natural drainway improved by an artificial ditch, following the exact course of the natural drainway under circumstances indicating that it would be permanent, which combination thereafter meet the requirements of a natural watercourse, shall be treated as a natural watercourse. The Supreme Court quoted with

approval from Brill v. Missouri, Kansas and Texas Railroad Company, 161 Mo.App. 472, 144 S.W. 174. " 'If the artificial channel is substituted for a natural one, *or is created* under such circumstances as indicate that it is to be permanent and to be a water course the same as though it was created by nature, riparian rights may attach to it. * * * But if a water course, in fact, exists, the fact that it is not an ancient one will not confer a right to obstruct it. And the rule is not changed by the fact that the water was flowing in an *artificial channel.'*"

Natural watercourse, natural drainway, or artificial channel, the choice of words would be immaterial. The cases hold that a cause of action was stated when plaintiffs pleaded *"Natural Drainway"*.

■ Was there sufficient evidence to warrant injunction relief? It is the established rule, of course, that we try such case de novo, and in doing so we must pay due deference to the finding of the chancellor. Niehaus v. Madden, 348 Mo. 770, 155 S.W.2d 141. Not only did the learned trial judge hear the evidence and observe the witnesses but in this instance the trial chancellor actually visited and saw the property and the ditches in question.

■ Defendants' predecessor in title, A. Harold Schmidt, testified by deposition. He was asked the following question:

Q. "Prior to this 1957 or 58 was there any continuous ditch running across Iowa-Missouri property and your property to the canal which is east of your property?"

A. "Not a ditch per se, natural drainage slews (sloughs)."

This would indicate to the court that the ditches subsequently constructed followed the course of the natural drainage sloughs. All of the witnesses testified of the existence of Ditch A and Ditch B. All agreed that they were connected. They disagree on the date, and they disagree as to whether permission was given. At a very minimum Ditches A and B were connected in 1958, six years prior to the defendants' acquisition of the property. In Haferkamp v. City of Rock Hill, Mo., 316 S.W.2d 620 the Supreme Court of Missouri quoted with approval the language contained in the Kentucky Case, City of Bowling Green v. Stevens, 205 Ky. 161, 265 S.W. 495. "Though the upper proprietor has no right to open or remove natural barriers and turn on lower lands surface water which would not otherwise flow in that direction, *he has the right, even by ditches and drains, to drain the surface water from his land into the channels which nature has provided, even though the quantity of water thrown upon the lower lands is thereby increased."* When the defendants acquired the property the surface water drained through Ditch A-B eastwardly across defendants' property into the Fabius River.

In Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698, under similar circumstances, the facts were: an artificial ditch had been constructed from the base of a large surface water lake which carried the overflow surface water from the lake. The artificial ditch followed the exact contour of a natural drainway which had previously carried off the overflow surface water, but in this instance, with the artificial ditch it carried off a greater amount in a deeper channel. When this artificial ditch was dammed it created a surface water problem for other adjoining property owners to the lake, the court said a natural drainway improved by an artificial ditch will be treated as a natural watercourse and we are convinced that such a watercourse should be treated as a natural watercourse insofar as concerns the liability of defendants for obstructing it.

We have considered the case of Armstrong v. Westroads Development Company, Mo.App., 380 S.W.2d 529 and the other authorities cited by defendants. They deal

with the "Common Enemy Doctrine" and are not germane to this case.

We conclude that the judgment should be affirmed. It is so ordered.

ANDERSON, P. J., and RUDDY, J., concur.