**Victor HIRSCH et al., Plaintiffs-Respondents,**

**v.**

**Donald STEFFEN et al., Defendants-Appellants.**

**Nos. 34450, 34460.**

Missouri Court of Appeals,
St. Louis District,
Division No. 1.

Oct. 31, 1972.

As Amended Nov. 29, 1972.

Bollow, Crist & Bollow, Shelbina, for plaintiffs-respondents.

Rendlen & Rendlen, Clifford H. Ahrens, Hannibal, for defendants-appellants.

WEIER, Judge.

The South Fabius River flows southeastwardly through the northeast Missouri Counties of Lewis and Shelby. Plaintiffs own farms in the South Fabius Valley at and near the north boundary of Shelby County in both Lewis and Shelby Counties. Defendants own a valley farm in Shelby County southeast and downstream from the land of the plaintiffs. Defendants' land is separated from that of plaintiffs by the farm of Francis Dawson who is not a party to this suit. Plaintiffs filed this suit in 1969 to compel defendants to remove an obstruction to natural drainage and for damages.

The South Fabius Valley is low, flat and alluvial. Prior to its confinement to a drainage ditch the South Fabius River was a convoluted stream which constantly overflowed resulting in crop damages to the valley farms. All witnesses seemed to agree that fifty-two years before the trial in 1970 the river had been confined to a straight dredged or dug channel with side levees erected to prevent flooding of the nearby farms. In the area where the parties own their land, the main ditch containing the stream of the South Fabius runs straight from the northwest to the southeast and is located southwest of the farms involved in this conflict. Meandering through the Halstead, Hirsch, Dawson and Steffen farms (in the order named) is the old river bed. Over the years since the construction of the drainage system it has largely silted in, and aside from a few low spots and holes, it is filled with grass and other vegetation. But it generally has well defined banks and is lower than the surrounding land. This old river bed, although meandering, follows a course parallel with and north of the main ditch. More than a mile after it passes through the west boundary of the Steffen farm, it re-joins the artificial channel of the main ditch and continues its southeastward course. Although the levee along the main ditch now prevents flood water spreading over the valley, it also prevents surface and drainage water from entering the main ditch. Therefore, at various intervals in the valley ditches and drains have been constructed to the main ditch to carry off water. In the case of large areas drained at one time by tributary streams, ditches were constructed with protective levees so they directly entered the main ditch, but in the area with which we are concerned, small ditches or drains collect water. This

water is channeled into pipes that run under the north levee into the main ditch. Flood gates prevent high water in the ditch from flowing back into the fields.

About the year 1958 Victor Hirsch, Francis Dawson and Donald Steffen jointly constructed a ditch from the old channel of the river in the west part of the Steffen farm south a short distance to the levee through which a thirty-six inch pipe was placed to carry the water into the main ditch. This drain was constructed to remove water from the old river bed, which if allowed to stand caused the adjacent ground to remain wet and soggy. This pipe as well as the others previously mentioned that are used to carry off surface water has a flood gate or backflow valve to prevent water from flowing through the levee back into the fields when high water fills the main ditch.

In 1969, after a 10 to 11-inch rain in three days inundated the entire valley, defendant Steffen erected a dam on his land across the old river bed immediately east of the ditch and pipe which he and his neighbors had constructed some ten years earlier. This had the effect of channeling all water previously carried off by both the old channel of the river and the ditch into the ditch alone and thence by the thirty-six inch pipe into the main ditch. Plaintiffs filed suit seeking injunctive relief and damages, contending that the erection of the dam prevented the natural flow of water down the old stream bed, and that when water was high in the main ditch the backflow valve prevented water from entering the main ditch thus causing an overflow on plaintiffs' upstream lands. When the water subsided in the main ditch, plaintiffs further asserted the flood water did not flow off as fast through the thirty-six inch pipe as it did when the old channel was open and the water could go down this natural drainway through the Steffen farm to its junction with the main ditch.

After hearing the evidence, the trial court made certain findings of fact wherein it determined that the private drainage system installed by Hirsch, Dawson and Steffen on Steffen's land was made only to supplement and not to supplant the drainage of the old channel of the river. According to court determination, the system was devised to remove standing water in the old bed of the river which frequently damaged crops through seepage and by maintenance of a high water level in the bottom fields. In time of high water, when the fields overflowed, the old channel of the river, when open, was an effective natural drainway to carry off these waters. There was substantial evidence to support the findings of the court. Not only was testimony adduced by the plaintiffs, but testimony given by the defendant Donald Steffen in the trial of another case in 1968 was introduced. In that case the defendants as plaintiffs had successfully prevented the maintenance of an obstruction in the same channel of the old river bed by a downstream landowner. We concur in the court's findings of fact. Rule 73.01(d), V.A.M.R.

After the court reviewed the evidence and found that the defendant had effectively and illegally blocked the channel of the old river which theretofore had served as a natural drainway for the area and determined that it had at no time been abandoned, it directed counsel for plaintiffs to prepare a decree which would require the defendants to remove all obstructions placed in the channel within 120 days from October 23, 1970, the date of the findings of fact and the conclusions of law determined by the court. The final decree was to include the requirement that the channel be restored to a near approximation of its previous width and depth so as to accommodate the previous flow of the river. Further definite requirements were set forth in this written instrument signed by the judge and filed in the case on October 26, 1970. Thereafter on November 12, 1970, a conference was held between the parties and their attorneys with respect to an alternative solution for carrying out the order contemplated by the court's memo-

randum opinion. The record recites that by agreement of the parties, the court appointed two men as special commissioners to inspect the land in question and report to the court their recommendations as to the most practical method of carrying out the details of the court's contemplated order. The commissioners were appointed by the court and they were given directions with regard to devising a plan to restore to plaintiffs' lands substantially the same degree of drainage which those lands formerly had through the natural channel of the old South Fabius River prior to the time the defendants obstructed the old river bed by constructing a levee. The plan was to be reduced to writing and the original filed with the clerk by the court. The two commissioners were men who were either employed or had been employed with the Soil Conservation Service in Shelby County. They were acquainted with the area involved in this proceeding and had had extensive experience in making surveys of land areas and water sheds in connection with drainage and water problems. On May 28, 1971 the commissioners, the parties and counsel again appeared in court and a hearing was held to determine the recommendations of the commissioners and an alternative plan for restoring the lands upstream to the same degree of drainage that they formerly enjoyed. Instead of requiring the defendants to remove the dam and any fills or obstructions which had been placed in the old river bed, the commissioners recommended that a forty-two inch pipe be placed by the side of the thirty-six inch pipe to assist in carrying the water from the area above the Steffen dam into the main drainage ditch. After the commissioners presented their findings, the court suggested that perhaps the best plan would be to elevate the forty-two inch pipe so that the bottom of this pipe would be at the same elevation as the top of the thirty-six inch pipe, thereby providing good drainage for overflow water when the water in the main ditch was up high enough to prevent water flowing into the main ditch through the thirty-six inch pipe and still not high enough to prevent water from flowing through the forty-two inch opening. This was considered a feasible solution by the commissioners. On November 8, 1971 the court entered its interlocutory decree wherein it approved the plan submitted by the commissioners and ordered that prior to January 1, 1972 the defendants should install and thereafter maintain at their own expense the forty-two inch drainage tube with a flood gate through the levee of the main ditch immediately adjacent to the existing thirty-six inch tube on the defendants' land. The court further ordered the defendants to make such additional excavation or appropriate improvement of the existing ditch which might be necessary in the opinion of the commissioners to allow the full and unimpeded flow of water through both tubes and to thereafter maintain the ditch at their expense. Further jurisdiction of the case was retained by the court until the order had been complied with in a manner meeting the approval of the commissioners. They were to submit a report on or before January 10, 1972 at which time the court would enter its final decree. Both plaintiffs and defendants appealed from this judgment.

In the findings of fact and conclusions of law adopted by the court on October 23, 1970, the court, as heretofore indicated, directed the attorney for plaintiffs to prepare a decree which would provide that the defendants remove all obstructions placed by them in the old river channel and restore it to its approximate previous width and depth. The law is clear that a natural water course or drainway may not be obstructed without liability for damages caused to others by the obstruction. Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698, 700[1]. Here the court determined that the old river bed was the natural water course providing a continuing function in carrying off flood water and water from a large drainage area. Under such circumstances, the court could issue a mandatory injunction requiring the

removal of the obstructions that were placed there by the defendants. Croley v. De Witt, Mo.App., 431 S.W.2d 657, 659[4]. In its original direction to plaintiffs' counsel, the court was well within its authority to direct the removal of the obstructions placed by the defendants in the old river bed and restore the channel to a near approximation of its previous width and depth prior to defendants' action in damming the old river bed and blocking the channel.

Neither can any fault be found with the appointment of the two special commissioners to inspect the land and report to the court their recommendations as to the most practical method of carrying out the details of the court's contemplated order, since this was agreed upon by the parties. § 515.010, RSMo 1969, V.A.M.S. When the commissioners completed their inspection of the premises and devised their plan, although it was within the authority given them under their order of appointment which authorized them to devise and submit a plan of their own, the plan submitted eliminated any removal of the dam or obstruction on the old stream bed and instead suggested a new method of drainage into the main drainage ditch. From the evidence it was obvious the original ditch and levee system had been constructed and was under the supervision of the Steffenville Drainage District. And so, irrespective of the benefits or disadvantages which may accrue to the parties in this law suit, the plan devised by the commissioners and the decree of the court which followed approving the plan and ordering its execution failed to take into account the provisions of § 242.370, RSMo 1969, V.A.M.S., wherein it is provided that no connection with the ditch of any drainage district shall be made by any landowner or owners unless the connection is consented to by the board of supervisors of the district and approved by the chief engineer. In the event of inability to obtain the consent of the board, the statute provides the landowners may file a petition for such connection in the circuit court having jurisdiction in the drainage district and the matter in dispute shall be decided by the court. We believe that this is a salutary provision since the placement of an additional pipe through the levee and into the main ditch of the drainage system would be of concern to the district itself and the question as to whether this method of drainage would perform the function formerly performed by the old channel of the river would be of great concern to others who live in the drainage area served by the old channel who are not parties to this litigation. In a matter of this kind which affects the property rights of others in the area and which creates a major change in the drainage of the land, due process would seem to require notice and a hearing to all those affected by the proposed plan. § 242.370 affords an administrative determination with a right to a hearing in the circuit court having jurisdiction. The judgment of the court adopting the proposed plan of the commissioners must be set aside.

We turn now to defendants' appeal. In their appeal, in addition to an attack upon the sufficiency of the evidence, defendants have contended that the construction of the ditch by the parties more than ten years prior to the filing of this action caused the defendants to acquire prescriptive rights by limitation to the old river bed southeast of the Steffen ditch; and further, that the plaintiffs by acquiescing in and participating in the construction of the new ditch and the abandonment of the old river bed were estopped to complain that the defendants had obstructed the old river bed. Under the findings of fact of the trial court, we determine that any significant obstruction occurred in 1969 when the dam was constructed by the defendants. Obviously neither limitation nor estoppel under the circumstances here present could be premised upon such a recent event. In view of the facts established by the evidence, the further contention that plaintiffs by abandoning the old river bed on their property

are estopped to complain that the defendants have obstructed the old river bed is also without merit.

■■■ Another contention by the defendants has as its thesis that the old river bed was not a natural water course or drainway because it had been abandoned more than fifty years before the filing of this action at the time that the main ditch was constructed by the drainage district and that it provided only surface water drainage. Surface water, however, ceases to be mere surface water when it reaches a natural drainway or water course. Jones v. Des Moines and Mississippi River Levee Dist. No. 1, Mo.App., 369 S.W.2d 865, 875[10]. In this instance a large area of perhaps as much as 2,000 acres was served not only by the three-foot pipe opening into the main ditch of the drainage district, but also by the old river channel. Subsidiary streams used the old river channel for the discharge of water from the area which they served. The trial court had substantial evidence to determine that the old river bed acted as a natural water course or drainway.

We find no error in the findings of fact determined by the trial court. We further find no error in the reference to the commissioners since this was by agreement of the parties. We do find error in the method proposed by the commissioners and adopted by the court in its judgment on November 8, 1971 since the method of restoring proper drainage to the area involved was already pre-empted by the statutory provisions of § 242.370, supra. For this last reason, we reverse and remand. Upon remand, the court shall enter its judgment in accordance with its findings of fact and conclusions of law and may require the removal of obstructions to the natural drainway or water course, or it may stay further relief to the plaintiffs pending application by defendants for an alternative method of drainage under the statutes provided in such cases. If the alternative method is approved at the conclu-

sion of that proceeding, the court may affirm by its decree the method of drainage authorized in the statutory proceeding, retaining superintending authority over its execution, or if not feasible, then it may issue its mandatory injunction.

DOWD, C. J., and CLEMENS, J., concur.