Frances DODGE, Plaintiff-Respondent,

v.

William H. MILLARD and Marjorie Ann Millard, Defendants-Appellants.

No. 39655.

Missouri Court of Appeals, Eastern District, Division Four.

March 13, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 13, 1979.

Everett Van Matre, Van Matre & Van Matre, Mexico, for defendants-appellants.

Gary V. Sokolik, Perry, for plaintiff-respondent.

DOWD, Presiding Judge.

A water drainage case.

Equitable action to enjoin defendants from maintaining dam in natural drainway causing water to back up and flood portions of plaintiff's land. Defendants appeal from mandatory injunction requiring removal of dam.

The lands of plaintiff and defendants adjoin in a configuration best illustrated by the letter "H", with defendants' land lying to the north above the letter's crossbar, and plaintiff's land generally corresponding to the southern or bottom portion, with the exception of the northwest (or, upper left) quadrant thereof. This northwest quadrant will be referred to as the Dunlap property. All the lands in question are high-quality farmland with generally flat topography.

Before 1962, plaintiff's lands were bisected by an old drainage ditch running north and south between the southeastern and southwestern quadrants, which was fed by some cross ditches running east and west. Near the northern boundary with defendants' property, the main north-south ditch turned west and flowed onto the Dunlap property, where it joined a waterway draining that quadrant. The combined waterway then continued north following a natural depression, crossed onto defendants' land, and generally flowed in a northerly direction until emptying into a local stream. Most, but not all, of plaintiff's land was thereby drained across that of the defend-

ants'.[1] The parties agree that, at the point this waterway flows onto defendants' land, it is a "natural watercourse."

In 1962, plaintiff's predecessor upgraded the drainage system on his land by deepening and widening existing ditches, and adding some new ones.

Beginning in 1965, water from the drainway entering defendants' land would sometimes, after heavy rainstorms, leave its usual course and sweep across defendants' croplands for several hundred yards, flattening vegetation. There was also some erosion in the depression containing the drainway, although this coincided with the death of grass that had been growing in the drainway due to chemicals of unknown origin.

In 1973, the defendants built the present earthen dam or levee on their own property, blocking the drainway at the point of entrance onto their land. Water from the drainway backed up, flooding portions of both the Dunlap land and that of the plaintiff, depriving the plaintiff of the use of approximately 7 acres of farmland. This suit and appeal followed.

■ In their first point, defendants contend that injunctive relief was inappropriate in that plaintiff had an adequate remedy at law under Chapter 244, VAMS. Section 244.010 provides, in pertinent part, that the owner or owners of "wet" or "flat" farmlands shall have the right to drain such land by constructing ditches across the land of another, where necessary, provided that the owners of any land so utilized are compensated for the land consumed by the drainage construction. Subsequent sections provide means for determinations as to the location of and compensation for such drains, where such matters are in dispute. VAMS, § 244.020 et seq.

In the instant case, the trial court found that "the flow of surface water into the

natural drainway or channel did not exceed the natural capacity of the drainway to cause damage to the defendants' property", following the improvements to plaintiff's drainage system. The plaintiff having thus utilized only the existing natural watercourse crossing defendants' land, there was no need for any appropriation of defendants' property for construction of new, or expansion of existing, drainage facilities, and Chapter 244 simply has no application herein. *Gray v. Schriber,* 58 Mo.App. 173 (1894).

■ No other legal remedy being suggested as available to the plaintiff, mandatory injunction to remove the levee obstructing the natural watercourse and flooding the plaintiff's land is clearly an appropriate remedy in Missouri. *Croley v. DeWitt,* 431 S.W.2d 657, 659–660 (Mo.App. 1968); *Dudley Special Road District of Stoddard County v. Harrison,* 517 S.W.2d 170, 181 (Mo.App.1974).

■ The essence of defendants' next three points, taken together, is that the plaintiff in fact damaged the defendants by exceeding the capacity of their drainways (contrary to the trial court's findings), and that plaintiff was therefore not entitled to the aid of equity in continuing a discharge of water that constituted unlawful conduct.

Our finding that the trial court's decree and findings are fully supported by the evidence is dispositive of this issue.

The evidence presented at trial on the issues of excessive discharge and damage was in conflict. Whereas defendant William Millard testified that water would sweep out of the existing drains after heavy rainfalls and flatten crops, it also appeared that fully three years passed following completion of plaintiff's improvements before this ever occurred. Defendant William Millard's brother testified that whereas he was formerly able to drive certain vehicles

1. Contrary to defendants' reading of the trial court's findings of fact, the trial court did not find that all of plaintiff's land drained across that of the defendants'. Finding number four, of which defendants complain, simply states that all of plaintiff's *ditches* drained across de-

fendants' lands. However, not all of plaintiff's land was drained by these ditches, and in Findings number three and five, the trial court explicitly states that certain areas of the plaintiff's land were not drained across that of defendants'.

across the drainage depression on defendants' land, he was no longer able to do so because of the erosion in the depression following the plaintiff's improvements. Defendants' soil conservation expert also testified that there was some erosion in the drainage areas. However, it also appeared from defendants' testimony that all such erosion became evident after the death of the vegetation that had been growing in the depression due to chemicals of unidentified origin.

Defendants' engineering expert also testified that the topography of plaintiff's land was altered to increase the watershed area serviced by defendants' drainway, but this expert admittedly had had no familiarity with the land in question before or at the time of plaintiff's improvements. Plaintiff's own expert, who had planned and laid out the actual improvements, testified that the drainage area was not thereby increased, that the overall volume of water discharged remained constant, and that the slope or fall of the ditches constructed would not permit water to flow at an erosive rate. The tenant who farmed plaintiff's land following the improvements but prior to the killing of the vegetation in the defendants' drainways testified that no erosion appeared on defendants' property after completion of those improvements.

The scope of our inquiry into factual disputes resolved by findings of the trial court is set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). On the above statement of the evidence, we cannot say that there is no substantial evidence to support the findings and decree of the trial court, or that the same are against the weight of the evidence, *Murphy, supra* at 32, and we decline to disturb them. Thus, the injunction granted plaintiff below, rather than enabling her to continue a discharge of water damaging to the defendants, merely secures her recognized rights in a natural watercourse free of obstruction. *Hirsch v. Steffen*, 488 S.W.2d 240, 243 (Mo.App.1972).

■ It is appropriate to comment at this time on the means chosen by defendants in "resolving" this dispute with the plaintiff. Regardless of whether the plaintiff's activities in discharging water were lawful or not, when defendants perceived themselves wronged, the proper course of action was to seek redress through the courts, whether for damages, abatement, or an adjustment under Chapter 244. The sort of self-help solution resorted to here whereby the rights of adjacent landowners are disregarded is neither justifiable nor appropriate in an orderly and civilized society.

■ Finally, defendants complain that the trial court's order requiring them to restore the drainway in question to the condition existing prior to its obstruction is not sufficiently specific or clear as to what is required of defendants. The actual language complained of requires restoration of the drainway entering defendants' land "so that the flow of water through said natural drainway or channel on and through defendants' land will be unobstructed and will flow along the same natural drainway across defendants' land that existed prior to blocking said natural drainway."

We find that this order suffers from no infirmity as urged by defendants, there being no appreciable uncertainty as to what will constitute compliance therewith. It is not the province of the courts to furnish the parties with construction specifications.

The judgment is affirmed.

SNYDER, J., and STOCKARD, Special Judge, concur.